United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DONALD CLOYCE WAGDA,

            Plaintiff,

    v.

TOWN OF DANVILLE, et al.,

            Defendants.

Case No. 16-cv-00488-MMC

**ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS; GRANTING STATE DEFENDANTS' MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION TO CONVERT**

Re: Dkt. Nos. 51, 53, 67

Before the Court are two motions to dismiss plaintiff Donald Cloyce Wagda's ("Wagda") First Amended Complaint, the first said motion, filed April 12, 2016, by defendants Town of Danville ("Town"), County of Contra Costa ("County"), David O. Livingston ("Livingston"), Steve Simpkins ("Simpkins"), Mike Jimenez ("Jimenez"), Emily Neabeack ("Neabeack"), Tom Rossberg ("Rossberg"), and Steven Stapleton ("Stapleton") (collectively, "County defendants"),[1] and the second, filed May 9, 2016, by defendants Edmund G. Brown, Jr., and Kamala D. Harris (collectively, "State defendants").  Both motions are brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.

_____

[1] Also before the Court is Wagda's motion, filed April 17, 2016, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, to convert County defendants' motion to a motion for summary judgment.  As the Court has not relied on the assertion challenged thereby, or on any of the challenged documents for the truth of the matters contained therein, the motion to convert is hereby DENIED.

**BACKGROUND**[2]

**A.    The Parties**

Wagda is an attorney who, at all relevant times, has been a resident of Town, which, in turn, is located in County.

Livingston is the County Sheriff and is sued solely in his official capacity.  Simpkins is the Town Chief of Police and is sued solely in his official capacity.  Jimenez is a police sergeant employed by Town and County and is sued in his individual capacity. Neabeack, Rossberg, and Stapleton are police officers employed by Town and County and are sued in their individual capacities.[3]

Edmund G. Brown, Jr., is the Governor of the State of California ("Governor Brown"), and Kamala D. Harris is the Attorney General of the State of California ("Attorney General Harris").  Both said defendants are sued solely in their official capacities.

**B.    The Events**

On August 16, 2014, in anticipation of the passage of Proposition 47 "("Prop 47"), Wagda formed a corporation to provide legal services to individuals expected to become eligible to reduce certain felony convictions to misdemeanors.  (See id. ¶ 21.)

On October 15, 2014, at the Town police station,[4] Wagda was arrested for driving under the influence ("DUI"), pursuant to § 23152(f) of the California Vehicle Code ("Vehicle Code"),[5] and for being under the influence of a controlled substance, pursuant

_____

[2] The factual allegations herein are taken from the operative complaint, the First Amended Complaint ("FAC"), filed March 29, 2016.

[3] In addition to the above-named County defendants, Wagda has sued a number of "Doe" defendants.  As no challenge has been brought on behalf of any of the Doe defendants, the Court does not address herein the sufficiency of the claims brought against them.

[4] In a separate filing, Wagda explains that he went to the police station "as a citizen seeking police assistance."  (See Pl.'s Req. for Jud. Notice at 2 & Ex. A.)

[5] Section 23152(f) makes it unlawful "for a person who is under the combined influence of any alcoholic beverage and drug to drive a vehicle."  See id.

United States District Court
Northern District of California

to § 11550 of the California Health & Safety Code ("Health & Safety Code") (the "October arrest").  (See id. ¶ 23.)  According to Wagda, Jimenez and Neabeack, prior to his arrest, interrogated him "extensive[ly]," notwithstanding repeated invocations of his right to remain silent and an invocation of his right to counsel.  (See id. ¶¶ 24, 26–28.) Additionally, Wagda alleges, Jimenez "expressed extreme moral disapproval with [his] professional and other First Amendment activity in connection with Prop 47" (see id. ¶ 31; see also id. ¶¶ 33–36), "revealing a deep personal animus toward [him]" (see id. ¶ 34). Wagda further alleges that Jimenez and Neabeack, motivated by such animus, disclosed to the State Bar of California ("State Bar") police reports relating to his October arrest (see id. ¶ 37) and, rather than exercising their discretion to cite and release him at the police station, instead booked him into jail at the Martinez Detention Facility ("MDF") (see id. ¶ 38), where he was subjected to misconduct including threats of extended confinement (see id. ¶¶ 55–56), placement in solitary confinement (see id. ¶ 57), coercion in answering booking questions (see id. ¶ 60), denial of lunch (see id. ¶ 61), forced signing of a statement regarding jailhouse rules (see id. ¶ 62), and delayed release (see id. ¶ 63).

Subsequently, on December 4, 2004, the Contra Costa County District Attorney's Office ("D.A.'s Office") charged Wagda with a drug-related DUI, pursuant to § 23152(e) of the Vehicle Code, and with being under the influence of a controlled substance, pursuant to § 11550(a) of the Health & Safety Code.  (See id. ¶ 64.)  On or before December 8, 2014, the D.A.'s Office provided Wagda with laboratory results showing his blood tested "negative for alcohol and positive for certain CNS [central nervous system] stimulants." (See id. ¶ 65.)

Approximately two weeks later, on December 22, 2014, while driving in Danville, Wagda was again arrested, on this occasion for driving under the influence of drugs, pursuant to § 23152(e) (the "December arrest").  (See id. ¶ 83.)  According to Wagda, Rossberg initially pulled him over for speeding (see id. ¶ 68) on a section of roadway that, under state law, constituted a speed trap (see id. ¶ 66) and, after learning of his prior DUI

1    arrest, questioned him about such arrest, notwithstanding his renewed invocation of his

2    right to remain silent and explanation that he had "an open court case" (see id. ¶¶ 69, 71;

3    see also id. ¶¶ 72–73).  Wagda further alleges that, after Stapleton arrived on the scene,

4    Rossberg took Wagda's pulse without his consent while Stapleton questioned him about

5    the October arrest "with the intent to drive up [his] heart rate" (see id. ¶ 80–81), and that

6    Rossberg arrested him after he declined to perform field sobriety tests ("FSTs") (see id.

7    ¶ 83).  Thereafter, Stapleton transported Wagda to the police station.  (See id. ¶ 87.)

8          Subsequently, Wagda alleges, Rossberg, rather than citing and releasing him at

9    the police station, booked him into MDF because of his refusal to answer questions and

10   consent to a blood draw (see id. ¶¶ 90, 92, 94), and, in support of a search warrant for his

11   blood, executed a "false and misleading" affidavit (see id. 30:24) containing "material

12   misrepresentations and omissions" (see id. ¶ 96) with respect to his speed, pulse rate

13   measurements, and ability to make decisions and answer questions (see id. ¶¶ 97–103)

14   (the "affidavit").  In addition, Wagda alleges, Rossberg used his statements about the

15   October arrest, his refusal to answer questions about such arrest, and his refusal to

16   consent to the blood draw and FSTs both in the affidavit (see id. ¶¶ 74, 106) and in a

17   police report the D.A.'s Office "relied upon . . . in its decision to file charges in connection

18   with the December [a]rrest" (see id. ¶¶ 75, 106).  Wagda further alleges that Rossberg

19   and Jimenez, both motivated by retaliation, made disclosures to the State Bar regarding

20   both the October and December arrests (see id. ¶ 107) and that Rossberg also "initiated"

21   two Department of Motor Vehicles ("DMV") proceedings against him (see id. ¶ 108),

22   namely, an "APS proceeding" (see id. ¶ 109) and a "Priority Re-Examination" (see id.

23   ¶¶ 110–112).

24         On March 12, 2015, the D.A.'s Office charged Wagda with a drug-related DUI,

25   pursuant to § 23152(e), and being under the influence of a controlled substance,

26   pursuant to § 11550(a).  (See id. ¶ 119.)  That same day, the D.A.'s Office also provided

27   Wagda with laboratory results showing his blood tested "negative for alcohol and positive

28   for CNS stimulant."  (See id.)

4

1        On October 8, 2015, pursuant to a "global plea agreement," Wagda, in connection

2   with the October arrest, pleaded "no contest" to one count of reckless driving involving

3   alcohol, pursuant to § 23103 of the Vehicle Code,[6] at which time all pending charges

4   stemming from both arrests were dismissed.  (See id. ¶ 120.)

5        Subsequently, on October 25, 2015, while Wagda was driving to a supermarket,

6   "an SUV marked Contra Costa County Sheriff" followed him; waited in the parking lot

7   while he went inside; and, when he returned to his car, "pulled around and confronted

8   [him]," at which time the "officer" inside "stared [him] down."  (See id. ¶ 122.)

9   **C.   Wagda's Claims**

10       Based on the above allegations, Wagda asserts in the FAC seventeen claims: (1)

11  a federal claim under 42 U.S.C. § 1983 for violation of his First Amendment rights in

12  connection with the October arrest ("First Claim") (id. ¶¶ 124–127); (2) a federal claim

13  under § 1983 for violation of his Fourteenth Amendment rights in connection with the

14  October arrest ("Second Claim") (id. ¶¶ 128–132); (3) a federal claim under § 1983 for

15  violation of his Fourth Amendment rights in connection with the October arrest ("Third

16  Claim") (id. ¶¶ 133–137); (4) a federal claim under § 1983 for violation of his First

17  Amendment rights in connection with the December arrest ("Fourth Claim") (id. ¶¶ 138–

18  141); (5) a federal claim under § 1983 for violation of his Fourth Amendment rights in

19  connection with the December arrest ("Fifth Claim") (id. ¶¶ 142–146); (6) a federal claim

20  under § 1983 for violation of his Fifth Amendment rights in connection with both the

21  October and December arrests/prosecutions ("Sixth Claim") (id. ¶¶ 147–150); (7) a

22  federal claim under § 1983 for violation of his Sixth Amendment rights in connection with

23  the October arrest/prosecution ("Seventh Claim") (id. ¶¶ 151–154); (8) a federal claim

24  under § 1983 for violation of his Fourteenth Amendment rights in connection with the

25  December arrest ("Eighth Claim") (id. ¶¶ 155–158); (9) a federal claim under § 1983 for

26

27         [6] Pursuant to § 23103.5, the prosecution may agree to accept a no contest plea to

28  a "violation of § 23103 in place of a charge for violation of § 23152."  See id.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   violation of the Doctrine of Unconstitutional Conditions ("Ninth Claim") (id. ¶¶ 159–162);

2   (10) a federal claim under § 1983 for violation of "civil rights" based on municipal policies,

3   customs, and/or practices ("Tenth Claim") (id. ¶¶ 163–166); (11) a state claim for false

4   arrest ("Eleventh Claim") (id. ¶¶ 167–170); (12) a state claim for false imprisonment

5   ("Twelfth Claim") (id. ¶¶ 171–174); (13) a state claim for invasion of privacy ("Thirteenth

6   Claim") (id. ¶¶ 175–182); (14) a state claim for negligence ("Fourteenth Claim") (id.

7   ¶¶ 183–187); (15) a state claim for violation of civil rights under California Civil Code

8   §52.1(b) based on searches and seizures in connection with the October and December

9   arrests ("Fifteenth Claim") (id. ¶¶ 188–193); (16) a state claim for violation of civil rights

10  under California Civil Code §52.1(b) based on a municipal pattern, practice, or policy

11  ("Sixteenth Claim") (id. ¶¶ 194–198); and (17) a federal claim under 28 U.S.C. § 2201 for

12  declaratory and injunctive relief based on enforcement of § 11550 of the Health & Safety

13  Code and a "continuing pattern" of depriving "citizens of Town and County" of their

14  constitutional rights (see FAC ¶ 200) ("Seventeenth Claim") (id. ¶¶ 199–203).

15          By their motion to dismiss, County defendants seek an order dismissing as to each

16  of them "the majority of claims asserted." (See County Reply at 1.)  By their motion to

17  dismiss, State defendants seek an order dismissing all claims asserted against them.

18                                    **LEGAL STANDARD**

19          Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be

20  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

21  under a cognizable legal theory."  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

22  699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of

23  the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v.

24  Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a

25  complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

26  allegations."  See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his

27  entitlement to relief requires more than labels and conclusions, and a formulaic recitation

28  of the elements of a cause of action will not do."  See id. (internal quotation, citation, and

                                              6

1    alteration omitted).

2        In analyzing a motion to dismiss, a district court must accept as true all material

3    factual allegations in the complaint, and construe them in the light most favorable to the

4    nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).[7]  "To

5    survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

6    as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.

7    662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be

8    enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.

9    Courts "are not bound to accept as true a legal conclusion couched as a factual

10   allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

### DISCUSSION

12       As discussed below, County defendants challenge Wagda's First through Eighth,

13   Tenth, Thirteenth, and Seventeenth Claims.[8]  State defendants challenge Wagda's

14   Seventeenth Claim, the sole claim Wagda brings against them.  The Court addresses

15   each challenged claim in turn.[9]

16   **A.  § 1983 Claims Arising Out of Wagda's October Arrest**

17       As noted, Wagda's First through Third Claims arise out of the October arrest.

18   _____

19       [7] Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider
     any material beyond the complaint.  See Hal Roach Studios, Inc. v. Richard Feiner & Co.,
20   Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  A district court may, however, consider
     documents that are subject to judicial notice.  See Mack v. South Bay Beer Distribs., Inc.,
21   798 F.2d 1279, 1282 (9th Cir. 1986).  Here, Wagda's unopposed Request for Judicial
     Notice, filed May 23, 2016, is hereby GRANTED as to the following three documents: (1)
22   "Detailed History for Police Incident #P142880066," relating to Wagda's first arrest (Ex.
     A); (2) Wagda's prescription drug record, as compiled by the California Department of
23   Justice (Ex. B); and (3) a page from the Attorney General's website describing a course
     for law enforcement officers titled "Drug Influence—11550 H&S" (Ex. C).

24       [8] County defendants do not challenge Wagda's Ninth, Eleventh, Twelfth, or
25   Fourteenth through Sixteenth Claims.

26       [9] The Court notes that, although the Court has endeavored to do so, it is difficult to
     analyze many of Wagda's claims, given the way he has structured the FAC.  Most of the
27   claims discussed herein contain multiple subparts, assert violations of multiple rights, and
     are brought against multiple defendants, without specifying, for any given subpart, the
28   particular right, particular defendant(s), or underlying behavior on which Wagda relies.

United States District Court
Northern District of California

County defendants contend the various acts alleged in support thereof do not establish a

§ 1983 claim against either Jimenez or Neabeack.

　　　To state a claim under § 1983, a plaintiff must allege two essential elements: (1)

that a right secured by the Constitution or laws of the United States was violated, and (2)

that the alleged violation was committed by a person acting under color of state law.  See

West v. Atkins, 487 U.S. 42, 48 (1988).

　　　"An officer's liability under section 1983 is predicated on his integral participation in

the alleged violation."  Blankenhorn v. City of Orange, 485 F.3d 463, 481 n.12 (9th Cir.

2007) (internal quotation and citation omitted).  "Under Section 1983, supervisory officials

are not liable for actions of subordinates on any theory of vicarious liability."  Hansen v.

Black, 885 F.2d 642, 645–46 (9th Cir. 1989).  Rather, "each Government official, his or

her title notwithstanding, is only liable for his or her own misconduct."  Iqbal, 556 U.S. at

677.

### 1.　First Claim: "Violation of First Amendment Rights—October Arrest— 42 U.S.C. § 1983"

　　　In his First Claim, Wagda alleges Jimenez and Neabeack violated his First

Amendment rights by depriving him of his "right to freedom of speech including, without

limitation, freedom of thought, freedom from compelled speech, freedom from compelled

listening, freedom from a chilling effect on speech, the right to petition the government for

a redress of grievances and the right to be free of police action motivated by retaliatory

animus."  (FAC ¶ 125.)  Based on said allegation, Wagda brings eleven separate

subclaims.

### a.　Interrogating Wagda (FAC ¶ 125(a))

　　　In his FAC, Wagda alleges Jimenez and Neabeack unlawfully interrogated him,

"including systematically interrupting and interfering with his speech asserting Fifth

Amendment rights" (FAC ¶ 125(a)), which, Wagda alleges, has "a chilling effect upon

[his] future speech asserting his Fifth Amendment rights during police detentions" (id.

¶ 29).  In his opposition, however, Wagda states only that the above-referenced

interrogation violated his "Fifth, Sixth, and Fourteenth Amendment Rights." (See Pl.'s

Opp'n to County MTD at 6.) Wagda does not argue, let only cite any authority to support

a finding, and the Court is aware of none, that the above-referenced conduct would

constitute a violation of the First Amendment. Under the circumstances, it appears that

Wagda is no longer relying on such conduct to support his First Amendment claim.

### b.   Berating and shaming Wagda (FAC ¶ 125(b))

Wagda alleges defendants "[b]erat[ed] and sham[ed]" him regarding his

"professional and other First Amendment activity in connection with Prop 47 and other

matters of public concern" and "prescrib[ed] what shall be orthodox regarding such

matters." (FAC ¶ 125(b).) In particular, Wagda asserts, Jimenez "expressed extreme

moral disapproval" with such activities and "sharply condemned the content and

viewpoints of [ ] Wagda's political speech." (See id. ¶ 31; see also id. ¶¶ 33–36.)

Such "[b]erating" and "shaming" (see id. ¶ 125(b)) is not, however, cognizable as a

First Amendment violation. See, e.g., Nunez v. City of Los Angeles, 147 F.3d 867, 875

(9th Cir. 1998) (holding "harsh words" not sufficient to support First Amendment claim;

explaining "[i]t would be the height of irony . . . if mere speech, in response to speech,

could constitute a First Amendment violation"). Further, as to Neabeack, Wagda's claim

fails for the additional reason that he does not allege any facts showing Neabeack's

participation or involvement in such alleged misconduct. See Blankenhorn, 485 F.3d at

481 n.12.

### c.   Booking Wagda into MDF (FAC ¶ 125(c))

Wagda alleges Jimenez and Neabeack, in retaliation for his First Amendment

activity, "book[ed] [him] into MDF instead of citing and releasing him at the police station."

(FAC ¶ 125(c); see also id. ¶ 38.) In their reply, County defendants, for purposes of the

instant motion, concede such booking "can be a basis" for a § 1983 First Amendment

claim. (See County Reply at 4:2–3.)

### d.   Disclosing October arrest to State Bar (FAC ¶ 125(d))

Wagda alleges Jimenez and Neabeack, in retaliation for his First Amendment

activity, disclosed to the State Bar information regarding his October arrest.  (See FAC

¶¶ 37, 125(d).)  County defendants contend, inter alia, such reporting does not constitute

a retaliatory action and that Wagda has not alleged any harm or chilling effect resulting

from such disclosure.

"To bring a First Amendment retaliation claim, the plaintiff must allege that (1) [he]

engaged in constitutionally protected activity; (2) the defendant's actions would chill a

person of ordinary firmness from continuing to engage in the protected activity; and (3)

the protected activity was a substantial motivating factor in the defendant's conduct."

Arizona Students' Ass'n v. Arizona Board of Regents, 824 F.3d 858, 867 (9th Cir. 2016)

(internal quotation and citation omitted).  The "chill" test is "generic and objective";

"[w]hether [plaintiff] himself was, or would have been, chilled is not the test."  O'Brien v.

Welty, 818 F.3d 920, 933 (9th Cir. 2016).

Although, under certain circumstances, reporting a professional to an organization

responsible for discipline may well be cognizable as a retaliatory action, the facts alleged

here are insufficient to show the disclosure at issue would have the requisite chilling

effect, given the lack of any allegations as to what consequences, if any, ordinarily would

be expected to occur from such a report.[10]

### e.    Events occurring at MDF (FAC ¶ 125(e)–(k))

With respect to events occurring at MDF, Wagda alleges defendants threatened to

withhold his release (see FAC ¶ 125(e)), threatened him with death (see id. ¶ 125(f)),

placed him in solitary confinement (see id. ¶ 125(g)), held him longer than necessary

(see id. ¶ 125(h)), coerced him into responding to booking questions (see id. ¶ 125(i)),

---

[10] Moreover, under California law, "the district attorney, city attorney, or other prosecuting agency shall notify the Office of the State Bar of California of the pendency of an action against an attorney charging a felony or misdemeanor immediately upon obtaining information that the defendant is an attorney[,] [which] notice shall identify the attorney and describe the crimes charged and the alleged facts."  See Cal. Bus. & Prof. Code § 6101(b).  The FAC lacks any explanation as to how an additional report providing the same or similar information would have a deterrent effect on a person of ordinary firmness.

United States District Court
Northern District of California

coerced him into executing an acknowledgment and endorsement of jailhouse rules (see id. ¶ 125(j)), and denied him food (see id. ¶ 125(k)).

The FAC contains no allegations indicating Jimenez or Neabeack had any involvement in the above-referenced events, all of which occurred at MDF.  Rather, the FAC identifies various "Doe" defendants in connection with such events.  (See FAC ¶¶ 51–63, 125(e)–(k).)  Consequently, the FAC fails to state a claim against Jimenez and Neabeack with respect to such events.  See Blankenhorn, 485 F.3d at 481 n.12.

### f.    Conclusion

With respect to Wagda's First Claim, for the reasons stated above, subparts (a), (b), and (d) are DISMISSED in their entirety, subparts (e)–(k) are DISMISSED with respect to defendants Jimenez and Neabeack, and, with the exception of subpart (b), Wagda is granted leave to amend.[11]  See Fed. R. Civ. P. 15(a)(2) (permitting amendment of complaint with leave of court; providing leave should be afforded "when justice so requires"); Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 2004) (noting Federal Rule of Civil Procedure 15(a)'s "direction that it is to be applied liberally in favor of amendments").  As to subpart (b), leave to amend is denied for the reason that, as a matter of law, berating and shaming are not cognizable as First Amendment violations and, thus, amendment of said subpart would be futile.  See Janicki Logging Co., 42 F.3d at 566 (holding leave to amend need not be granted where amendment of complaint would "constitute[] an exercise in futility") (internal quotation and citation omitted).

### 2.    Second Claim: "Violation of Fourteenth Amendment Rights—October Arrest—42 U.S.C. § 1983"

In his Second Claim, Wagda alleges Jimenez and Neabeack violated his

---

[11] Although County defendants oppose leave to amend with respect to the disclosure of the October arrest (subpart (d)), the Court finds leave to amend appropriate, as Wagda has amended his complaint only once and it is not clear such claim could not be saved by amendment.  See United States v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011) (holding "[d]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment" (internal quotation and citation omitted)).

1  Fourteenth Amendment rights by depriving him of the "right not to be deprived of

2  personal liberty or property without due process of law, the right not to be punished

3  without an adjudication of guilt, the right to be free of arbitrary, capricious, conscience-

4  shocking and/or improperly motivated action of the government, and the right to equal

5  protection under the laws."  (FAC ¶ 129.)  Based on said allegation, Wagda brings twelve

6  separate subclaims.

### a.    Interrogating Wagda (FAC ¶ 129(a))

8        Wagda alleges Jimenez and Neabeack interrogated him in violation of his Fifth

9  Amendment rights against self-incrimination (see id. ¶ 129(a)) and that their interrogation

10  techniques "shock the conscience and are arbitrary, capricious, and offensive to a

11  civilized system of justice" (id. ¶¶ 25, 28).  In particular, he alleges that: (1) prior to his

12  arrest, despite repeatedly invoking his right to remain silent, Jimenez and Neabeack

13  "systematically interrupted," "ignored," and/or "further aggressive[ly] question[ed]" him

14  (see id. ¶ 24); and (2) after his arrest, despite reasserting his right to remain silent and

15  invoking his right to counsel, Jimenez continued to question him (see id. ¶¶ 26–28), "at

16  least partially" in Neabeack's presence (see id. ¶ 28), and Jimenez "misleadingly

17  assured" him that they were "talking off the record" (see id.).

18        While claims for coercive interrogation can be brought under the Fourteenth

19  Amendment as substantive due process claims, the standard for showing a substantive

20  due process violation is "quite demanding."  See Stoot v. City of Everett, 582 F.3d 910,

21  928 (9th Cir. 2009) (noting Supreme Court has "refer[red] to police torture or other abuse

22  as actionable under the Fourteenth Amendment") (internal quotation and citation

23  omitted).  In particular, a substantive due process claim is "cognizable only if the alleged

24  abuse of power shocks the conscience and violates the decencies of civilized conduct."

25  Id. (internal quotation and citation omitted).  For "abusive executive action," which

26  includes police conduct, "only the most egregious official conduct can be said to be

27  arbitrary in the constitutional sense."  County of Sacramento v. Lewis, 523 U.S. 833,

28  846–47, 849 (1998) (defining "arbitrary" as "conscience shocking" and explaining that

1    "conduct intended to injure in some way unjustifiable by any government interest is the

2    sort of official action most likely to rise to the conscience-shocking level") (internal

3    quotation and citation omitted).

4          Wagda's allegations of persistent questioning, punctuated, when he invoked his

5    rights, by unspecified "verbal interruption[s]," "audible gasp[s]," and an "audible sigh" (see

6    FAC ¶ 24), and one assurance of being off the record do not meet the demanding

7    standard for a substantive due process claim. Compare Stoot, 582 F.3d at 928 (holding

8    improper promises of leniency and threats of heightened punishment did not rise to level

9    of Fourteenth Amendment violation), with Martinez v. City of Oxnard, 337 F.3d 1091,

10   1092 (9th Cir. 2003) (holding allegations that officer "brutally and incessantly questioned"

11   suspect with multiple gunshot wounds, interfered with medical treatment while suspect

12   was screaming in pain, and continued questioning after suspect pleaded with him to stop

13   sufficient to support due process claim), and Cooper v. Dupnik, 963 F.3d 1220, 1248–50

14   (9th Cir. 1992) (holding conduct shocked conscience where police coerced statements

15   from suspect by "hours of mistreatment and . . . sophisticated psychological torture," in

16   plan to keep suspect from testifying in own defense at trial and to curtail his right to

17   present insanity defense), overruled on other grounds by Chavez v. Martinez, 538 U.S.

18   760, 773 (2003).

19                    **b.    Berating and shaming Wagda (FAC ¶ 129(b))**

20         Wadga alleges his claim that defendants "berat[ed] and sham[ed]" him and

21   "prescrib[ed] what shall be orthodox" states a Fourteenth Amendment violation.  (See

22   FAC ¶ 129(b).)  As with his First Amendment claim based thereon, see supra part A.1.b.,

23   Wagda's Fourteenth Amendment claim fails because he has not shown such conduct

24   constitutes a cognizable wrong under § 1983.  See Oltarzewski v. Ruggiero, 830 F.2d

25   136, 139 (9th Cir. 1987) (noting "[v]erbal harassment or abuse . . . is not sufficient to state

26   a constitutional deprivation" under § 1983) (internal quotation and citation omitted); see

27   also Stoot, 582 F.3d at 928 (requiring, for substantive due process violation, conduct that

28   "shocks the conscience") (internal quotation and citation omitted).  Lastly, as discussed

United States District Court
Northern District of California

1    earlier, Wagda's claim fails as to Neabeack for the additional reason that he does not

2    allege her participation or involvement in such conduct.

3              c.    **Booking Wagda into MDF (FAC ¶ 129(c))**

4          In support of his Fourteenth Amendment claim, Wagda again relies on his

5    allegations that Jimenez and Neabeack chose to book him into jail rather than cite and

6    release him.  (See FAC ¶¶ 38, 129(c); see also supra part A.1.c.)  Such allegations,

7    however, do not meet the standard for a substantive due process violation, particularly

8    given Wagda's allegation that said defendants had the "statutory discretion" to book him.

9    (See FAC ¶ 38; see also Stoot, 582 F.3d at 928.)

10             d.    **Disclosing October arrest to State Bar (FAC ¶ 129(d))**

11         In support of his Fourteenth Amendment claim, Wagda also relies on his above-

12   referenced allegations regarding the disclosure of his arrest to the State Bar.  (See FAC

13   ¶¶ 37, 129(d); see also supra part A.1.d.)  Such allegations do not meet the standard for

14   a substantive due process violation.  See Stoot, 582 F.3d at 928.

15             e.    **Targeting enforcement of drug laws (FAC ¶ 129(e))**

16         Wagda alleges defendants "[s]electively and pretextually target[ed] enforcement of

17   the drug laws" against him due to their "perception of him as an addict."  (FAC ¶ 129(e).)

18   In particular, he alleges Jimenez manifested such a perception by saying "[y]ou've got a

19   drug problem" (see id. ¶ 40) and made "comments suggesting that Town, County, and he

20   engage in a custom, pattern and practice of targeting enforcement of facially neutral drug

21   laws at people perceived to [be] addicted to controlled substances, as a pretext for

22   punishing such people for property crimes they are assumed to be committing, but for

23   which the police do not have probable cause or reasonable suspicion" (see id. ¶ 41)

24   (emphasis omitted).  Wagda alleges such conduct deprived him of equal protection.  (See

25   id. ¶ 42.)[12]

26   _____

27         [12] Although Wagda also asserts the above-referenced conduct deprived him of due
     process (see id.), he fails to elaborate as to such assertion or cite to any authority
28   suggesting such conduct would support a due process claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   To state an equal-protection claim under § 1983, a plaintiff must show the

2   defendant "acted with an intent or purpose to discriminate against the plaintiff based

3   upon membership in a protected class." Lee v. City of Los Angeles, 250 F.3d 668, 686

4   (9th Cir. 2001) (internal quotation and citation omitted).  Selective prosecution claims are

5   judged "according to ordinary equal protection standards," under which the plaintiff has

6   the burden of showing the government's selective enforcement: (1) had a discriminatory

7   effect; and (2) was motivated by a discriminatory purpose.  Wayte v. United States, 470

8   U.S. 598, 608 (1985).  The decision whether to prosecute may not be "deliberately based

9   upon an unjustifiable standard such as race, religion, or other arbitrary classification,

10  including the exercise of protected statutory and constitutional rights."  Id. (internal

11  quotation and citation omitted).

12      Here, the FAC does not allege membership in a protected class.  Although the

13  FAC asserts perceived drug addicts "may . . . represent a suspect class entitled to

14  heightened scrutiny" (FAC ¶ 42),[13] the authority is to the contrary.  See, e.g., Ball v.

15  Massanari, 254 F.3d 817, 824 (9th Cir. 2001) (holding alcoholics are "not . . . a suspect,

16  or a quasi-suspect class for purposes of equal protection analysis").

17      In any event, Wagda has failed to show the requisite discriminatory motive.

18  Nothing in the FAC supports Wagda's allegation that Jimenez, or any other defendant,

19  targeted him for enforcement of drug laws because he was perceived as a drug addict,

20  rather than for his Prop 47 activities.  (See, e.g., FAC ¶¶ 37–38.)  Indeed, Wagda is not

21  even the type of drug user he alleges defendants are targeting, i.e., people who need to

22  commit property crimes to support their addiction.  (See id. ¶ 33 (alleging Jimenez's

23  knowledge of Wagda's profession); ¶ 41 (quoting comments by Jimenez about going

24  after "junkies on the street," as opposed to "good people" or "high end" people, because

25

26      [13] Wagda's reliance on Robinson v. California, 370 U.S. 660 (1962), is not
    persuasive, as Robinson addressed a provision criminalizing the status of addiction to
27  narcotics.  See id. at 660, 666–67 (holding provision making it illegal to "be addicted to
    the use of narcotics" unconstitutional as "a cruel and unusual punishment in violation of
28  the Fourteenth Amendment").

1    "[i]t's the junkies on the street that are causing most of the problems") (emphasis

2    omitted).)

3              f.        **Events occurring at MDF (FAC ¶ 129(f)–(l))**

4         Wagda's allegations as to events occurring at MDF are similar to those set forth in

5    his First Claim.  (See FAC ¶ 129(f)–(l); see also ¶ 125(e)–(k).)  As discussed above, the

6    FAC fails to state a claim against Jimenez and Neabeack with respect to such events,

7    because it does not allege any facts showing their participation or involvement therein.

8    See Blankenhorn, 485 F.3d at 481 n.12.

9              g.        **Conclusion**

10        With respect to Wagda's Second Claim, for the reasons stated above, subparts

11   (a)–(e) are DISMISSED in their entirety, subparts (f)–(l) are DISMISSED with respect to

12   defendants Jimenez and Neabeack, and, with the exception of subpart (b), Wagda is

13   granted leave to amend.[14]  As to subpart (b), leave to amend is denied for the reason

14   that, as a matter of law, berating and shaming are not cognizable wrongs under § 1983

15   and, thus, amendment of said subpart would be futile.  See Janicki Logging Co., 42 F.3d

16   at 566.

17            **3.       Third Claim: "Violation of Fourth Amendment Rights—October
                         Arrest—42 U.S.C. § 1983"**
18
          In his Third Claim, Wagda alleges Jimenez and Neabeack violated his Fourth

19   Amendment rights by depriving him of his "right to be free of unreasonable searches and

20   seizures, unlawful imprisonment and unreasonable force."  (FAC ¶ 134.)  Based on said

21   allegation, Wagda brings four separate subclaims.

22            **a.       Booking Wagda into MDF (FAC ¶ 134(a))**

23        In support of his Fourth Amendment claim, Wagda again relies on his retaliatory-

24   booking allegations against Jimenez and Neabeack.  (See id. ¶¶ 38, 134(a).)  As noted

25

26   _____

27        [14] Although County defendants oppose leave to amend with respect to Wagda's
     interrogation (subpart (a)), the Court finds leave to amend appropriate.  As noted above,
     Wagda has amended his complaint only once, and it is not clear such claim could not be
28   "saved by any amendment."  See Corinthian Colleges, 655 F.3d at 995.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    above, County defendants, for purposes of the instant motion, have conceded said

2    allegations state a claim under the First Amendment.  As County defendants have not

3    addressed the sufficiency of said allegations to support a claim under the Fourth

4    Amendment, the Court does not further address such additional claim herein.

5                    **b.      Events occurring at MDF (FAC ¶ 134(b)–(d))**

6            In support of his Fourth Amendment claim, Wagda relies on allegations as to

7    essentially the same events at MDF (see id. ¶ 134(b)–(d)) as those alleged in support of

8    his First Claim (see id. ¶ 125(g)–(h)) and Second Claim (see id. ¶ 129 (h)–(i), (l)).  As

9    discussed above, the FAC fails to state any claim against Jimenez and Neabeack based

10   on such events, in that there is no allegation supporting their participation or involvement

11   therein.  See Blankenhorn, 485 F.3d at 481 n.12.

12                   **c.      Conclusion**

13           With respect to Wagda's Third Claim, for the reasons stated above, defendants

14   Jimenez and Neabeack are DISMISSED as to subparts (b)–(d), and Wagda is granted

15   leave to amend said subparts.

16   **B.    § 1983 Claims Arising Out of Wagda's December Arrest**

17           As noted, Wadga's Fourth through Eighth Claims arise out of the December arrest.

18   County defendants contend all such claims should be dismissed, with the exception of

19   the Fifth Claim, which "should be limited."  (See County MTD at 11.)

20           The Court first addresses County defendants' challenges to the inclusion of certain

21   defendants in the above-referenced claims.

22           **1.      Defendants Jimenez, Neabeack, and Stapleton**

23           At the outset, County defendants contend Wagda has failed to allege any facts

24   showing Jimenez and Neabeack "participat[ed] . . . in any constitutional violations relating

25   to the December . . . arrest" and thus should be dismissed from the "December arrest

26   Section 1983 claims" in their entirety.  (See County MTD at 11.)  Similarly, County

27   defendants contend Stapleton should be dismissed from the Fourth, Sixth, Seventh, and

28   Eighth Claims.

United States District Court
Northern District of California

### a.    Jimenez

As to the Fourth through Eighth Claims, with the exception of the subparts based on alleged retaliatory disclosure (see FAC ¶¶ 139(b), 143(f)), the FAC alleges only that Jimenez was the "immediate supervisor in connection with all events occurring in the geographical area of Town" (see id. ¶ 11) and that, "[i]n the course of [Wagda's] detention and arrest," Rossberg "communicated with" him by radio (see id. ¶ 87).  Such general allegations are insufficient to plead Jimenez's participation or involvement in any alleged wrongdoing.  See Blankenhorn, 485 F.3d at 481 n.12; Hansen, 885 F.3d at 646 (holding supervisor may be held liable under § 1983 based on personal involvement in constitutional deprivation or "a sufficient causal connection" between supervisor's wrongful conduct and constitutional deprivation; further holding "vague allegation" that police chief was involved in "conspiracy to deprive [plaintiff] of her rights" was inadequate for supervisory liability).

### b.    Neabeack

With the exception of a single subpart based on Neabeack's alleged failure to communicate Wagda's October assertion of his right to counsel (see FAC ¶ 148(d); see also id. ¶ 27), the FAC alleges only that Rossberg "communicated with" Neabeack by radio and that said defendant was "present at the scene of the arrest at or about the time thereof."  (See id. ¶ 87.)  Such general allegations do not suffice to plead Neabeack's participation or involvement in any alleged wrongdoing other than the above-referenced failure to communicate.  See Blankenhorn, 485 F.3d at 481 n.12.

### c.    Stapleton

With the exception of the subpart based on Stapleton's involvement in taking Wagda's pulse (see FAC ¶ 143(c)), the FAC's allegations as to Stapleton, namely, that Rossberg "communicated with" him by radio and that he was present at the scene of the arrest (see id. ¶ 87) are, as discussed above, too general to plead Stapleton's "integral participation" in any alleged violation.  See Blankenhorn, 485 F.3d at 481 n.12 (internal quotation and citation omitted).

18

### d. Conclusion

Accordingly, with the limited exceptions identified above, the Fourth through Eighth Claims are DISMISSED as to defendants Jimenez, Neabeack, and Stapleton, and Wagda is granted leave to amend those claims with respect to said defendants.

### 2. Fourth Claim: "Violation of First Amendment Rights—December Arrest—42 U.S.C. § 1983"

In his Fourth Claim, Wagda alleges Jimenez, Rossberg, and Neabeack violated his First Amendment rights by depriving him of all of the rights set forth in his First Claim. (See FAC ¶ 139.) Based on said allegation, Wagda brings six separate subclaims.

### a. Booking Wagda into MDF (FAC ¶ 139(a))

Wagda alleges Rossberg and a Doe defendant "book[ed] [him] into MDF instead of citing and releasing him," in retaliation for exercising his Fourth Amendment right to a warrant for the blood draw and his Fifth Amendment right to remain silent. (See id. ¶ 139(a); see also id. ¶¶ 90–92, 94–95.) County defendants contend Wagda "has pled himself out of this claim" by alleging Rossberg's "standard practice" was to send anyone with a second DUI to MDF. (See County Reply at 7–8 (quoting FAC ¶ 94).)[15]

The FAC alleges: (1) Rossberg gave Wagda the "choice" of being cited and released at the police station if he "cooperate[d] with police questioning and consent[ed] to a blood draw," or being booked into MDF if he "continue[d] to assert" his Fourth and Fifth Amendment rights (see FAC ¶ 90); (2) Wadga rejected Rossberg's offer (see id. ¶ 92); and (3) Rossberg then booked him into MDF (see id. ¶¶ 92, 94). Such allegations are sufficient to plead a First Amendment retaliation claim (see supra part A.1.d; see also Arizona Students' Ass'n, 824 F.3d at 867 (setting forth elements of First Amendment retaliation claim), and given the above-alleged conversation, Wagda's reference to Rossberg's "standard practice" does not suffice to defeat it.

---

[15] Initially, County defendants argued Rossberg was obligated by statute to book Wagda into custody. In their reply, County defendants concede state law gave Rossberg "discretion" as to whether to book or cite persons arrested for DUI. (See County Reply at 8.)

### b.    Disclosing October and December arrests to State Bar (FAC ¶ 139(b))

Wagda alleges defendants Rossberg and Jimenez, each with different retaliatory motives, disclosed information in December regarding both his October and December arrests to the State Bar.  (See FAC ¶¶ 107, 139(b).)

For the reasons stated above in part A.1.d., regarding the first disclosure to the State Bar, the Court finds Wagda has also failed to state a claim for retaliatory disclosure with respect to the above-referenced December disclosure.  In particular, the FAC lacks any allegations as to the anticipated consequences of such a report or how such a report would have a chilling effect on future conduct.

### c.    Omitting information from affidavit (FAC ¶ 139(c))

Wagda alleges Rossberg's search-warrant affidavit "omitt[ed] . . . information that was required to make the affidavit not misleading," in retaliation for his assertion of his Fifth Amendment rights.  (See id. ¶ 139(c); see also id. 30:24–25.)  Although the omissions on which this subclaim is based are not clearly identified, the Court assumes Wagda is relying on his earlier allegations as to "jack[ing] up [his] pulse rate" at the December arrest (see id. ¶ 100) and his lower pulse rates at the time of the October arrest (see id. ¶ 102).  County defendants contend, inter alia, Wagda has not alleged facts showing the contents of the affidavit had any effect on his future conduct.

As noted above, one of the elements of a First Amendment retaliation claim is that the plaintiff show the defendant's conduct would "chill a person of ordinary firmness from continuing to engage in the protected activity."  Arizona Students' Ass'n, 824 F.3d at 867 (internal quotation and citation omitted); see also Ford v. City of Yakima, 706 F.3d 1188, 1193 (9th Cir. 2013) (per curiam) (requiring plaintiff to show police conduct "would chill a person of ordinary firmness from future First Amendment activity").  Thus, while Wagda is correct that a First Amendment retaliation claim does not require him to show he personally was deterred from engaging in protected activity, the complaint nonetheless must allege facts sufficient to meet the above-cited objective standard.  See O'Brien, 818 F.3d at 933.  Here, the FAC fails to meet such standard, as it lacks any facts to support a

1    finding that a person of ordinary firmness would be chilled by the alleged omissions.  The

2    FAC does not contain, for example, any allegations indicating when, or even if, a suspect

3    would learn of such omissions, nor any allegations as to the sufficiency of the affidavit to

4    support issuance of the search warrant had such information not been omitted.  See

5    generally FAC ¶¶ 96–106.)[16]

6              d.      **Including statements declining consent in affidavit and police**
                        **reports (FAC ¶ 139(d))**

7

8    Wagda alleges Rossberg retaliated against him for exercising his Fourth

9    Amendment rights by "[i]ncluding extensive discussion," in his affidavit and police reports,

     of Wadga's refusals to consent to a blood draw and field sobriety tests.  (See FAC

10   ¶ 139(d); see also id. ¶ 106.)

11

12   Such claim fails because Wagda's allegations do not plead conduct rising to the

     level of a constitutional violation.  See, e.g., Nunez, 147 F.3d at 875 (rejecting First

13

14   Amendment retaliation claim; finding plaintiff did not suffer cognizable "adverse" action

     where claim based on "bad-mouth[ing]").

15

16             e.      **Initiating DMV Priority Re-Examination (FAC ¶ 139(e))**

17   Wagda alleges Rossberg retaliated against him by "[i]nitiating a DMV Priority Re-

     Examination."  (See FAC ¶ 139(e); see also id. ¶¶ 108, 110–12.)  County defendants

18   argue such claim fails because state law permits officers to initiate such examinations.

19   As Wagda points out, however, for purposes of stating a First Amendment retaliation

20   claim, he is not required to show police conduct is otherwise unlawful.  See O'Brien, 818

21   F.3d at 932 (holding "[o]therwise lawful government action may nonetheless be unlawful

22   if motivated by retaliation for having engaged in activity protected under the First

23   Amendment").

24   Wagda's claim nonetheless fails, because his allegations are insufficient to show

25

26   ───────────────

27       [16] As noted, Wagda, earlier in the FAC, alleges the affidavit contained both
     "misrepresentations and omissions."  (See FAC ¶ 96.)  Wagda does not refer, in this
     subpart, to any alleged misrepresentations.  Nonetheless, the Court notes its analysis
28   appears equally applicable to a challenge based on misrepresentations.

United States District Court
Northern District of California

initiation of such an examination is likely to have the requisite chilling effect.  In particular, the FAC does not explain the significance of such an examination, e.g., what the examination entails and what consequences it might carry for an individual's driving privileges.

### f.    Targeting surveillance of Wagda (FAC ¶ 139(f))

Wadga alleges defendants "[t]arget[ed]" him with "electronic and automotive surveillance . . . using automatic license plate reader technology."  (FAC ¶ 139(f); <u>see also</u> <u>id.</u> ¶ 122.)  Said claim fails as against any named defendant because the FAC contains no allegations indicating any such defendant's participation or involvement therein.  (<u>See</u> <u>id.</u> ¶ 122); <u>Blankenhorn</u>, 485 F.3d at 481 n.12.

### g.    Conclusion

With respect to Wadga's Fourth Claim, for the reasons stated above, subparts (b)–(e) are DISMISSED in their entirety, subpart (f) is DISMISSED as to defendants Jimenez, Rossberg, and Neabeack, and Wagda is granted leave to amend such subparts.[17]

### 3.    Fifth Claim: "Violation of Fourth Amendment Rights—December Arrest—42 U.S.C. § 1983"

In his Fifth Claim, Wagda alleges Jimenez, Rossberg, Neabeack, and Stapleton violated his Fourth Amendment rights by depriving him of all of the rights set forth in his Third Claim.  (<u>See</u> FAC ¶ 143.)  Based on said allegation, Wagda brings ten separate subclaims.

### a.    Initiating traffic stop (FAC ¶ 143(a))

Wagda alleges Rossberg violated his Fourth Amendment rights by "[i]nitiating a traffic stop . . . without probable cause and in violation of the Speed Trap Statute."  (<u>Id.</u> ¶ 142(a).)  In particular, Wagda alleges the section of roadway on which he was stopped

---

[17] County defendants oppose leave to amend with respect to the December disclosure of Wagda's arrests (subpart (b)).  The Court again finds leave to amend appropriate; Wagda has amended his complaint only once, and it is not clear said claim could not be saved by amendment.  <u>See</u> <u>Corinthian Colleges</u>, 655 F.3d at 995.

United States District Court
Northern District of California

1    qualified as a "speed trap" under state law,[18] based on a speed survey establishing a

2    higher speed than the posted speed limit, and thus that Rossberg was "prohibited from

3    prosecuting" him "on that portion of road for any violation involving the speed of a

4    vehicle."  (See id. ¶ 66.)  County defendants contend a violation of the speed trap law

5    does not negate probable cause.

6              Under the Fourth Amendment, "[a] traffic stop for a suspected violation of the law

7    is a seizure" for which "officers need only reasonable suspicion—that is, a particularized

8    and objective basis for suspecting the particular person stopped of breaking the law."

9    Heien v. North Carolina, 135 S.Ct. 530, 536 (2014) (internal quotation and citation

10   omitted).

11             Here, regardless of whether Rossberg's stop violated state speed-trap laws,[19]

12   Wagda's claim fails because he does not allege Rossberg lacked reasonable suspicion to

13   stop him for speeding.  See, e.g., People v. Hardacre, 116 Cal. App. 4th 1292, 1300–01

14   (2004) (holding reasonable suspicion supported stop where facts and circumstances

15   known to officer at time indicated defendant was exceeding posted speed limit,

16   notwithstanding later finding portion of road in question constituted speed trap).  Notably,

17   the FAC alleges the posted speed limit was 30 mph (see FAC ¶ 66) and that Rossberg

18   "suggested to [ ] Wagda that he had been speeding" (id. ¶ 68).  The FAC does not allege

19   the speed at which Wagda was driving or that such speed was under the posted limit.

20   Rather, it merely challenges Rossberg's assertion that he "locked" Wagda's speed on

21   radar.  (See id. ¶ 97.)

22             **b.      Prolonging traffic stop (FAC ¶ 143(b))**

23   Wagda alleges Rossberg violated his Fourth Amendment rights by "[p]rolonging"

24

25             [18] Cal. Vehicle Code §§ 40801–40805.

26             [19] A violation of state law does not itself suffice to show Rossberg violated
27   Wagda's federal constitutional rights.  See, e.g., Baker v. McCollan, 443 U.S. 137, 146
     (1979) (holding "Section 1983 imposes liability for violations of rights protected by the
28   Constitution, not for violations of duties of care arising out of tort law").

1   his traffic stop, without reasonable suspicion, for a period longer than needed to enforce

2   the speed limit laws.  (See id. ¶ 143(b).)  County defendants contend Wagda does not

3   allege facts indicating the stop was longer than needed to investigate whether Wagda

4   was driving under the influence.

5           Under the Fourth Amendment, "the tolerable duration of police inquiries in the

6   traffic-stop context is determined by the seizure's mission—to address the traffic violation

7   that warranted the stop . . . and attend to related safety concerns."  Rodriguez v. United

8   States, 135 S.Ct. 1609, 1614 (2015) (internal quotation and citation omitted).

9   Nonetheless, an officer "may conduct certain unrelated checks" during a traffic stop, see

10  id. at 1615: (1) "so long as [unrelated] inquiries do not measurably extend the duration of

11  the stop," see id. (alteration in original) (internal quotation and citation omitted); or (2) if

12  there is "reasonable suspicion" to justify further detention, see id.

13          Here, Wagda's claim fails because the FAC does not allege facts sufficient to

14  support his assertion that Rossberg improperly prolonged the stop.  (See FAC ¶ 69

15  (alleging Rossberg questioned Wagda about his prior arrest "even though the time

16  necessary to effectuate the purported purpose of the traffic stop . . . had expired")); see

17  Iqbal, 556 U.S. at 678 (holding "courts are not bound to accept as true a legal conclusion

18  couched as a factual allegation").  Wagda does not allege, for example, how long the

19  stop lasted, the sequence of events that took place during that time, or how Rossberg's

20  unrelated DUI inquiry "measurably extend[ed]," see Rodriguez, 135 S.Ct. at 1615, the

21  stop.  Moreover, the FAC fails to allege facts showing Rossberg lacked reasonable

22  suspicion to further detain him, and thus prolong the stop, in order to investigate whether

23  he was driving under the influence.  Cf. id. at 1616–17 (remanding for resolution of

24  "question whether reasonable suspicion of criminal activity justified detaining [defendant]

25  beyond completion of the traffic infraction investigation").  Wagda does not allege, for

26  example, that he had not taken any drugs, nor facts sufficient to support a finding that he

27  lacked any symptoms suggesting he was under the influence of a drug.

28          c.      Taking Wagda's pulse (FAC ¶ 143(c))

1    Wagda alleges Rossberg and Stapleton violated his Fourth Amendment rights by

2    taking his pulse without his consent.  (See FAC ¶ 142(c).)  In particular, the FAC alleges

3    Rossberg took his pulse, at his wrist, while Stapleton and Rossberg were questioning him

4    about his prior arrest and that Stapleton acted "with the intent to drive up [his] heart rate."

5    (See id. ¶ 81.)  County defendants contend taking Wagda's pulse was "'reasonable'

6    and[,] thus, legal under the Fourth Amendment."  (See County MTD at 15.)

7    As an initial matter, the Court notes there is no dispute that taking Wagda's pulse

8    constituted a search and that Rossberg did not have a warrant for such search.[20]  The

9    parties do, however, dispute whether reasonable suspicion or probable cause is the

10   applicable standard for assessing the legality of such search.

11   Under the Fourth Amendment, a search is prohibited only if it is "unreasonable."

12   See Birchfield v. North Dakota, 136 S.Ct. 2160, 2173 (2016).  "Usually, Fourth

13   Amendment reasonableness means that a search . . . must be supported by probable

14   cause, though pat-downs and similar minor intrusions need only be supported by

15   reasonable suspicion."  United States v. Scott, 450 F.3d 863, 868 (9th Cir. 2005).  Here,

16   Wagda, citing a case involving a blood draw, contends pulse-taking constitutes "a kind of

17   'invasion of bodily integrity [that] implicates an individual's most personal and deep-rooted

18   expectations of privacy.'"  (Pl.'s Opp'n to County MTD at 19 (alteration in original)

19   (quoting Missouri v. McNeely, 133 S.Ct. 1552 (2013)).)  The Court, however, finds such

20   action, which involved no more than a brief physical contact with light pressure on the

21   wrist, is akin to the type of physical intrusions the Supreme Court has treated as minimal.

22   See, e.g., Birchfield, 136 S.Ct. at 2177–78, 2184 (distinguishing blood tests from

23

24        [20] Contrary to Wagda's contention, Dubner v. City and County of San Francisco,
266 F.3d 959, 965 (9th Cir. 2001), does not stand for the proposition that a plaintiff can
25   make out a prima facie case for a Fourth Amendment violation "simply by alleging that a
search was conducted without a valid warrant."  (Pl.'s Opp'n to County MTD at 19.)
26   Dubner concerned the requisite evidentiary showing and burden-shifting applicable at
trial to prove a Fourth Amendment violation, see id., not pleading standards applicable to
27   a motion to dismiss.  The Court also notes such analysis is equally applicable to Wagda's
invocation of Dubner with respect to his unlawful arrest claim.  See infra part B.3.d.
28

United States District Court
Northern District of California

swabbing inside of check and scraping underneath fingernails; noting "significantly" greater intrusion entailed in former); Hayes v. Florida, 470 U.S. 811, 814 (1985) (characterizing fingerprinting as "a much less serious intrusion upon personal security than other types of searches").  Accordingly, the Court finds the standard applicable to the taking of Wagda's pulse is reasonable suspicion.

Reasonable suspicion for a search must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  See Terry v. Ohio, 392 U.S. 1, 21 (1968).  Here, as noted above, Wagda does not allege he was not under the influence of drugs at the time he was driving, nor that he lacked any symptoms suggesting such influence.  (See, e.g., FAC ¶¶ 66–67, 69, 71–73, 78–79).[21]  In the absence of facts sufficient to show Rossberg and Stapleton lacked reasonable suspicion to take his pulse, Wagda's allegations as to pulse-taking fail to support a Fourth Amendment claim.[22]  See Iqbal, 556 U.S. at 678.

### d.    Arresting Wagda (FAC ¶ 143(d))

The FAC alleges Rossberg violated his Fourth Amendment rights by arresting him "without a warrant, without probable cause and in violation of the [s]peed [t]rap [s]tatute." (FAC ¶ 142(d).)  As noted, Rossberg arrested Wagda on a charge of driving under the influence of drugs, pursuant to Cal. Vehicle Code § 23152(e).  (See id. ¶ 83.)

Under the Fourth Amendment, "a warrantless arrest . . . is reasonable . . . where there is probable cause to believe that a criminal offense has been or is being committed."  Devenpeck v. Alford, 543 U.S. 146, 152 (2004).  "The test for whether

---

[21] Contrary to Wagda's contention that the FAC suffices because it "contains no facts establishing the existence of probable cause (or even reasonable suspicion) prior to the pulse taking" (Pl.'s Opp'n to County MTD at 20), Wagda "bears the burden" of proving the absence thereof.  See, e.g., Beck v. City of Upland, 527 F.3d 583, 864 (9th Cir. 2008).

[22] In light of such ruling, the Court need not reach at this time County defendants' contention that exigent circumstances justified taking Wagda's pulse.  The Court notes, however, and as Wagda points out, even if the effect of drugs dissipates over time, such circumstance, standing alone, does not suffice to establish exigent circumstances.  See McNeely, 133 S.Ct. at 1563.

United States District Court
Northern District of California

1   probable cause exists is whether at the moment of arrest the facts and circumstances

2   within the knowledge of the arresting officers and of which they had reasonably

3   trustworthy information were sufficient to warrant a prudent [person] in believing that the

4   petitioner had committed or was committing an offense." Blankenhorn, 485 F.3d at 471

5   (alteration in original) (internal quotation and citation omitted).

6          Here again, Wagda's claim fails because, as discussed above, the FAC does not

7   allege facts sufficient to support his assertion that Rossberg arrested him without

8   probable cause.  See Iqbal, 556 U.S. at 678.  As noted above, Wagda does not allege he

9   was not under the influence of drugs at the time he was driving, nor that he lacked any

10  symptoms suggesting such influence.  Rather, he raises a number of other allegations

11  that could bear on, but do not suffice to allege, the absence of probable cause.  (See,

12  e.g., FAC ¶¶ 78–79 (alleging Rossberg did not find any contraband on his person or in

13  his car), ¶¶ 80–81, 99 (alleging Rossberg and Stapleton manipulated his pulse rate).)

14              **e.        Booking Wagda into MDF (FAC ¶ 143(e))**

15         In support of his Fourth Amendment claim, Wagda again relies on his retaliatory-

16  booking allegations.  (See id. ¶ 143(e); see also id. ¶¶ 90–92, 94–95.)  As noted, County

17  defendants concede that similar allegations regarding Wagda's October arrest state a

18  claim under the First Amendment, and, as County defendants do not address the

19  sufficiency of such allegations to support a claim under the Fourth Amendment, the Court

20  does not further address such additional claim herein.

21              **f.        Disclosing October and December arrests to State Bar (FAC ¶ 143(f))**

22

23         In support of his Fourth Amendment claim, Wagda again relies on his allegations

24  of retaliatory disclosure to the State Bar.  (See id. ¶ 143(f).)

25         The Fourth Amendment forbids "unreasonable searches and seizures."  See U.S.

26  Const. amend. IV; Terry, 392 U.S. at 8–9.  As the FAC contains no allegations indicating

27  the above-referenced disclosure constitutes a search or a seizure, the Court finds a claim

28  based on such disclosure is not cognizable under the Fourth Amendment.

27

### g.    Ordering blood draw (FAC ¶ 143(g))

Wagda alleges Rossberg violated his Fourth Amendment rights by "[o]rdering" a blood draw, "in bad faith reliance upon" a search warrant he procured based on his "false and misleading affidavit."  (See FAC ¶ 143(g).)  As County defendants have offered no argument directed to this basis of Wagda's Fourth Amendment claim, the Court does not further address such subpart herein.

### h.    Including statements declining consent in affidavit and police reports (FAC ¶ 143(h))

Wagda characterizes as a Fourth Amendment violation his claim that Rossberg retaliated against him by including in Rossberg's affidavit and police reports "extensive discussion" of his refusal to consent to testing.  (See id. ¶ 143(h); see also id. ¶ 106.) Wagda's Fourth Amendment claim fails to the extent it is based on such allegation as Wagda has not shown Rossberg's inclusion of such information constitutes a cognizable wrong.

### i.    Restraining Wagda by forcing him to sit (FAC ¶ 143(i))

Wagda alleges defendants "unreasonably restrain[ed] [him] at MDF by forcing him to endure extremely long-term confinement in a seated position in a chair (i.e., for substantially all of his time at MDF)."  (FAC ¶ 143(i).)[23]

At the outset, the Court finds the above-referenced conduct insufficient to support a Fourth Amendment claim against any of the named defendants, as the FAC contains no facts showing any such defendant's participation or involvement therein.  See Blankenhorn, 485 F.3d at 481 n.12.  Moreover, as the only fact alleged in connection with such restraint is lengthy seating, the FAC lacks sufficient detail to support a finding of a constitutional violation.  See Gibson v. County of Washoe, 290 F.3d 1175, 1197 (9th Cir. 2002), overruled on other grounds by Castro v. County of Los Angeles, ___ F.3d ___, 2016 WL 4268955 (9th Cir. 2016) (holding, with respect to claim of excessive force in

---

[23] Earlier in the FAC, Wagda alleges he was "held in custody" at MDF and released "approximately 16 hours after the initiation of the subject traffic stop."  (See id. ¶ 92.)

1   connection with restraint, determination as to reasonableness "requires a careful

2   balancing of the nature and quality of the intrusion on the individual's Fourth Amendment

3   interests against the countervailing government interests at stake"; explaining analysis

4   requires "careful attention to the facts and circumstances in each particular case,"

5   assessed "from the viewpoint of the reasonable officer on the scene") (internal quotations

6   and citations omitted).

7            **j.       Targeting surveillance of Wagda (FAC ¶ 143(j))**

8            In support of his Fourth Amendment claim, Wagda again relies on his allegations

9   of improper surveillance.  (See FAC ¶ 143(j); see also id. ¶ 122.)  As discussed above in

10  part B.2.f., such claim fails as against the named defendants, no facts as to any such

11  individual's participation or involvement in the challenged activity having been alleged.

12           **k.       Conclusion**

13           With respect to Wadga's Fifth Claim, for the reasons stated above, subparts (a)–

14  (d), (f), and (h) are DISMISSED in their entirety, subparts (i)–(j) are DISMISSED as to

15  defendants Jimenez, Rossberg, Neabeack, and Stapleton, and Wagda is granted leave

16  to amend said subparts.[24]

17           **4.       Sixth Claim: "Violation of Fifth Amendment Rights—42 U.S.C. § 1983"**

18           Wagda's Sixth Claim is based on the police interrogation that he alleges occurred

19  in the course of the December stop, which interrogation, Wagda alleges, violated his Fifth

20  Amendment right not to be compelled to be a witness against himself.  (See FAC ¶ 148.)

21           The Fifth Amendment provides a "right against self-incrimination," see Arizona v.

22  Roberson, 486 U.S. 675, 685 (1988), that bars "mak[ing] the declarant a witness against

23  himself in a criminal proceeding," see Stoot, 582 F.3d at 925.  "[M]ere coercion,"

24  however, does not create a cause of action under § 1983 for a violation of the Self-

25  Incrimination Clause, absent use of the compelled statement in a criminal case."  Crowe

26  _____

27           [24] Although County defendants also oppose leave to amend to the extent the
    Fourth Amendment claim is based on either the pulse-taking (subpart (c)) or arrest
28  (subpart (d)), the Court, for the reasons stated earlier, finds leave to amend appropriate.

1    v. County of San Diego, 608 F.3d 406, 427 (9th Cir. 2010).

2          Here, Wagda alleges, as against Jimenez, Rossberg, Neabeack, and Stapleton,

3    three separate subclaims based on the above-referenced interrogation.

4                a.    **Interrogating Wagda about October arrest (FAC ¶ 148(a)–(b))**[25]

5          Wagda alleges Rossberg "compell[ed] him to be a witness against himself in the

6    [October] case" by interrogating him in December about the October arrest, despite: (1)

7    his prior invocations, in October, of his right to remain silent and his right to counsel; and

8    (2) his contemporaneous invocations, in December, of his right to remain silent and his

9    statement that he had an open case regarding the October arrest.  (See FAC ¶ 148(a)–

10   (b); see also id. ¶¶ 24, 26–28 (October arrest), id. ¶¶ 69–76 (December arrest).)

11         The above-referenced claim fails, however, because the FAC does not include any

12   facts alleging the use of Wagda's December statements in the October case.  See

13   Crowe, 608 F.3d at 427.  Indeed, the only statements Wagda alleges he made to

14   Rossberg were that he had a prior arrest for DUI (see id. ¶ 69), which was allegedly for

15   drugs (see id. ¶ 72), and that he was being prosecuted in connection with such arrest

16   (see id. ¶¶ 71, 73), all of which information was on Rossberg's computer (see id. ¶ 72;

17   see also Pl.'s Opp'n to County MTD at 9 (asserting December interrogation "did not result

18   in any statements that were incriminating with respect to [the October] case")).

19               b.    **Using statements in December proceedings (FAC ¶ 148(c))**

20         Wagda alleges defendants violated his Fifth Amendment rights by using

21   statements from the December interrogation against him in his December case, namely,

22   in the affidavit for the search warrant and in a police report the D.A.'s Office "relied upon"

23   in deciding to file charges.  (See FAC ¶ 148(c); see also id. ¶¶ 74–75.)  In that regard, he

24   alleges Rossberg included in such documents his "statements regarding the October

25   [a]rrest (and the fact of his refusals to answer other questions regarding that arrest)."  (Id.

26   _____

27         [25] In light of Wadga's explanation that the claim set forth in subpart (b) is an
     elaboration of the claim in subpart (a) (see Pls.' Opp'n to County MTD at 7 n.4), the Court
28   treats subparts (a) and (b) together as a single claim.

United States District Court
Northern District of California

¶ 74; see also id. ¶ 75.)

As with the above-referenced two subparts, such claim fails because there are no facts alleged to support a finding that any of those statements were used against him.  In particular, none of the statements about the October arrest provided any information other than that already a matter of record, see Stoot, 582 F.3d at 925 n.15 (holding "the Fifth Amendment has been violated only when government officials use an incriminating statement to initiate or prove a criminal charge"), and there are no facts showing his refusal to answer questions played any role in the decision to prosecute him or thereafter to prove any charge against him.  There are no facts, for example, showing the judge who reviewed the affidavit for the search warrant would not have approved the issuance of such warrant in the absence of any statement or refusal by Wagda, nor facts showing the D.A.'s Office, in "rely[ing] upon" the police report, considered any such statement or refusal significant when making its decision to file charges.

### c.   Failing to record and communicate October assertions of Fifth Amendment rights (FAC ¶ 148(d))

Wagda alleges defendants violated his Fifth Amendment rights by "[c]ontributing to the foregoing by failing to adequately record and communicate" his October assertions of his Fifth Amendment rights.  (See FAC ¶ 148(d).)[26]  Such claim necessarily fails because it is derivative of the preceding three subparts, which, as discussed above, fail to state a claim.

### d.   Conclusion

For the reasons stated above, Wagda's Sixth Claim is DISMISSED in its entirety, and Wagda is granted leave to amend said claim.

---

[26] In connection with this subpart, Wagda, in his opposition, makes reference to both Jimenez and Neabeack, the two officers who made the October arrest (see Pl.'s Opp'n to County MTD at 9); in the FAC, however, Wagda alleges that, during the October arrest, Neabeack "failed to communicate" his verbal assertion of his right to counsel, which assertion Wagda alleges he made while Jimenez was not present (see FAC ¶ 27).

United States District Court
Northern District of California

### 5. Seventh Claim: "Violation of Sixth Amendment Rights—42 U.S.C. § 1983"

In his Seventh Claim, Wagda alleges Jimenez, Rossberg, Neabeack, and Stapleton violated his Sixth Amendment right to assistance of counsel in his October case by the manner in which he was interrogated during the December stop.  (See id. ¶ 152; Pl.'s Opp'n to County MTD at 6.)  In particular, Wagda alleges he was "repeatedly interrogat[ed] . . . about the October [a]rrest . . ., in the absence of already-appointed counsel, despite [his] then-present verbal admonition that he had 'an open court case' regarding the October [a]rrest."  (See FAC ¶ 152.)  County defendants contend Wagda's Sixth Amendment claim fails because, inter alia, the FAC shows Wagda did not disclose any information that might have been used to his detriment in the October case.

"Once a defendant's Sixth Amendment right to counsel has attached, the government is forbidden from 'deliberately eliciting' incriminating statements from the defendant."  Randolph v. People of the State of Cal., 380 F.3d 1133, 1143 (9th Cir. 2004) (quoting Massiah v. United States, 377 U.S. 201, 206 (1964)).  Such right to counsel "covers pretrial interrogations to ensure that police manipulation does not render counsel entirely impotent" and includes "the deliberate elicitation by law enforcement officers . . . of statements pertaining to the charge."  Kansas v. Ventris, 566 U.S. 586, 590–91 (2009).

Here, although the FAC alleges Rossberg questioned Wagda about the October arrest, after charges based thereon had been filed and counsel appointed (see FAC ¶¶ 70–73), the FAC includes no facts showing Rossberg elicited any information other than matters of existing record that were known to Rossberg from his computer.  (See id. ¶¶ 71–73.)  Under such circumstances, Wagda has not established a violation of his Sixth Amendment right to counsel.  See Randolph, 380 F.3d at 1143; cf. United States v. Bagley, 641 F.2d 1235, 1239 (9th Cir. 1981) (rejecting Sixth Amendment Massiah claim where government learned "nothing more . . . than appellant's description of the charges that brought him into custody").

Accordingly, Wagda's Seventh Claim is DISMISSED in its entirety, and Wagda is granted leave to amend such claim.

**6.** **Eighth Claim: Violation of Fourteenth Amendment Rights—December Arrest—42 U.S.C. § 1983"**

In his Eighth Claim, Wagda alleges Jimenez, Rossberg, Neabeack, and Stapleton violated his Fourteenth Amendment rights by depriving him of all of the rights set forth in his Second Claim. (FAC ¶ 156.) Based on said allegation, Wagda brings six separate subclaims.

County defendants contend the basis of Wagda's Eighth Claim is "unclear" and that Wadga "may not assert a Fourteenth Amendment violation where another, more specific constitutional amendment applies." (See County MTD at 13.)

**a.** **Committing unspecified acts and omissions (FAC ¶ 156(a))**

In subpart (a), Wagda purports to "incorporate[] by reference" the "acts and omissions enumerated in Paragraphs 138 through 154." (FAC ¶ 156(a).) The Court finds such claim overly broad and ambiguous. Paragraphs 138–54 of the FAC encompass Wadga's Fourth, Fifth, Sixth, and Seventh Claims, which assert, respectively, numerous violations of his First, Fourth, Fifth, and Sixth Amendment rights. Given the breadth of such allegations, the Court cannot determine what conduct Wagda seeks to challenge under the Fourteenth Amendment, nor the particular basis for any such challenge(s). Accordingly, to the extent Wagda's Fourteenth Amendment claim is based thereon, such claim fails.

**b.** **Manipulating, misrepresenting, or fabricating evidence (FAC ¶ 156(b))**

Wagda next alleges defendants "[m]anipulat[ed], misrepresent[ed] and/or fabricat[ed] evidence that was used to support [his] criminal and administrative prosecutions." (See FAC ¶ 156(b).)

Such subclaim likewise fails as ambiguous. First, as to "criminal . . . prosecutions," the Court cannot determine the stage of the December arrest proceedings to which Wagda is referring, nor the particular conduct on which he seeks to rely. It is unclear, for example, whether Wagda means to base such subclaim on events occurring after charges were brought against him by the D.A.'s Office, and/or on events occurring

1  prior to the institution of court proceedings.

2      Similarly, with respect to "administrative prosecutions," the Court cannot determine

3  the particular proceeding(s) to which Wagda is referring, nor the particular conduct he is

4  challenging in connection therewith.  Further, to the extent Wagda seeks to base such

5  claim on his allegation that, in a "DMV APS hearing," Rossberg "conjured a boilerplate

6  description of a nervous suspect and . . . falsely applied that hypothetical description to

7  [him]" (FAC ¶ 105), the Court finds such conclusory allegation insufficient to state a claim.

8  See Iqbal, 556 U.S. at 678.

9          c.    Making false/misleading statements in affidavit (FAC ¶ 156(c))

10     Wagda alleges defendants "made false and misleading statements under oath" in

11  the "affidavit set forth in support of a search warrant used in [his] prosecution."  (FAC

12  ¶ 156(c).)  As noted above, Wagda alleges Rossberg obtained a search warrant for his

13  blood and that the supporting affidavit Rossberg submitted to a state court judge

14  contained "material misrepresentations and omissions."  (See id. ¶96.)

15     Government investigators can be held "liable for violating the Fourth Amendment

16  when they submit false and material information in a warrant affidavit."  See Galbraith v.

17  County of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002); see also Chism v.

18  Washington State, 661 F.3d 380, 386 (9th Cir. 2011) (setting forth elements of "judicial

19  deception claim" under Fourth Amendment).  "[I]f a constitutional claim is covered by a

20  specific constitutional provision, such as the Fourth . . . Amendment, the claim must be

21  analyzed under the standard appropriate to that specific provision, not under the rubric of

22  substantive due process."  Lewis, 523 U.S. at 843 (internal quotation and citation

23  omitted); see, e.g., Graham v. Connor, 490 U.S. 386, 395 (1989) (holding claim of

24  unreasonable seizure arises under Fourth Amendment, not substantive due process).

25     Accordingly, to the extent Wagda alleges Rossberg's misrepresentations in the

26  search warrant affidavit violated his right to substantive due process, such claim fails.

27          d.    Making false/misleading statements in police reports (FAC
                  ¶ 156(d))
28

34

United States District Court
Northern District of California

1     Wagda's allegation that defendants made "false and misleading statements in

2  police reports" that the D.A.'s Office "relied upon . . . in its decision to file charges" (FAC

3  ¶ 156(d)) likewise falls within the ambit of the Fourth Amendment and, accordingly, fails

4  to state a Fourteenth Amendment claim for violation of substantive due process.  See,

5  e.g., Galbraith, 307 F.3d at 1126–27 (holding "Fourth Amendment principles, and not

6  those of due process, govern," where plaintiff alleged intentional falsification of autopsy

7  report played material role in false arrest and prosecution).  Moreover, even if such claim

8  could be brought under the Fourteenth Amendment, it is unclear from the FAC what

9  statements provide the basis for any such claim.  Cf. Devereaux v. Abbey, 263 F.3d

10  1070, 1074–75 (9th Cir. 2001) (en banc) (acknowledging, in context of § 1983 action

11  against county social workers alleged to have knowingly obtained false evidence of child

12  abuse, "due process right not to be subjected to criminal charges on the basis of false

13  evidence that was deliberately fabricated by the government"; noting, without reference

14  to Fourth Amendment, all claims against law enforcement officers had been resolved by

15  settlement).

16        **e.    Deactivating recording devices (FAC ¶ 156(e))**

17     Wagda alleges defendants "[d]eactivat[ed] recording devices to cover up [their]

18  wrongdoing."  (FAC ¶ 156(e).)  In particular, he alleges, Rossberg deactivated an audio

19  recorder after his arrest (see id. ¶¶ 86, 94), which created a "gap" in the recordings of

20  "certain events" at the scene of the arrest and at the police station (see id. ¶ 89), and that

21  Rossberg "falsely claimed" such gap was caused by equipment failure (see id.; see also

22  id. ¶ 100); Wagda alleges the unrecorded events included his consent to breath testing

23  (see id. ¶ 89), Rossberg's original citation-and-release offer (see id. ¶¶ 90, 94), the

24  second pulse-taking (see id. ¶ 100), and "provocative comments [by Rossberg] . . .

25  suggesting that [ ] Wagda's pulse readings were being manipulated" (see id.).

26     Wagda, however, has not cited any authority to support his claim that, standing

27  alone, deactivating a recording device, which essentially amounts to a failure to collect

28  unfavorable evidence, is cognizable as a constitutional violation.

1

> **f.    Making false/misleading statements in DMV proceedings (FAC ¶ 156(f))**

2

Wagda alleges Rossberg made "false and misleading verbal statements, including

3

under oath, in a DMV administrative proceeding."  (FAC ¶ 156(f).)  For the same reasons

4

set forth in part B.6.b, the Court finds such allegations too ambiguous to support a

5

constitutional claim.

6

> **g.    Conclusion**

7

For the reasons stated above, Wagda's Eighth Claim is DISMISSED in its entirety,

8

and Wagda is granted leave to amend said claim.

9

**C.    Tenth Claim: "Violation of Civil Rights—42 U.S.C. § 1983—<u>Monell</u>"**

10

In his Tenth Claim, Wagda alleges Town, County, Livingston, and Simpkins are

11

liable for violations of his civil rights by reason of eight alleged policies, customs, and/or

12

practices.  (<u>See</u> FAC 51:24–25, ¶ 164.)

13

A local government may be sued under § 1983 where an allegedly unconstitutional

14

action "implements or executes" a government policy or custom.  <u>See</u> <u>Monell v.</u>

15

<u>Department of Social Services of the City of New York</u>, 436 U.S. 658, 690–91 (1978).

16

Liability cannot be based, however, on a <u>respondeat superior</u> theory.  <u>See</u> <u>id.</u> at 691.

17

Thus, to establish <u>Monell</u> liability, a plaintiff must show: "(1) that [he] possessed a

18

constitutional right of which [he] was deprived; (2) that the municipality had a policy; (3)

19

that this policy amounts to deliberate indifference to the plaintiff's constitutional right;

20

and[] (4) that the policy is the moving force behind the constitutional violation." <u>See</u>

21

<u>Dougherty v. City of Covina</u>, 654 F.3d 892, 900 (9th Cir. 2011).  "Absent a formal

22

governmental policy, [a plaintiff] must show a longstanding practice or custom which

23

constitutes the standard operating procedure of the local government entity."  <u>Trevino v.</u>

24

<u>Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotation and citation omitted).

25

County defendants contend Wagda has failed to include in the FAC sufficient

26

factual allegations to support a <u>Monell</u> claim against any of the above-referenced

27

defendants.

28

1

2

### 1.    Defendants Livingston and Simpkins

To the extent Wagda is suing Livingston and Simpkins solely in their official capacities (see FAC 1:18–19, ¶¶ 9–10), such claim fails because Wagda has also named Town and County as defendants, and, consequently, both said officials are redundant defendants.  See Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dept., 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant.").

To the extent Wagda is suing Livingston and Simpkins in their individual capacity, such claim fails because the FAC does not allege any specific misconduct by either said defendant in connection with the instant case.  Rather, it merely alleges that Livingston and Simpkins are, respectively, the County sheriff and Town police chief (see FAC ¶¶ 9–10); that they are final policymakers "charged with the actions," respectively, of County's and Town's law enforcement officers (see id.); and that each Doe defendant acted with the "actual or implied permission, consent, authorization, and approval" of Livingston and/or Simpkins (see id. ¶ 15).  Such general and conclusory allegations do not suffice to state a claim.  See Iqbal, 556 U.S. at 678; see also Hansen, 885 F.2d at 646.[27]

The Court next turns to the sufficiency of the Monell claims as alleged against Town and County.

### 2.    Not giving effect to assertions of Fifth and Sixth Amendment rights (FAC ¶ 164(a))

Wagda alleges defendants have a "custom or practice of law enforcement officers . . . deliberately and systematically interrupting, ignoring and/or otherwise failing to give

---

[27] Wagda's only response to County defendants' argument as to the lack of facts regarding either Livingston or Simpkins is that he has "incorporated by reference" the allegations of retaliation made against Livingston by another plaintiff in another case, Howard v. County of Contra Costa, 13-cv-03626 (N.D. Cal. 2013).  (See Pl.'s Opp'n to County MTD at 6; FAC ¶¶ 22(b), 164(e).)  As set forth below, see infra note 29, such attempted incorporation is improper and, in any event, Wagda fails to explain how Livingston's alleged retaliation against the alleged whistleblower in Howard is relevant here.

1    constitutionally proper effect to detainees' assertions" of the right to remain silent under

2    the Fifth Amendment and right to counsel under the Fifth and Sixth Amendments,

3    "including through a failure to procure and implement computer database and information

4    technology systems necessary to properly record and distribute information regarding the

5    same."  (FAC ¶ 164(a).)  For the reasons discussed below, the FAC fails to satisfy either

6    the first or second elements of a Monell claim.[28]

7        First, as the Court has found the FAC does not adequately allege a violation of

8    Wagda's Fifth or Sixth Amendment rights (see supra parts B.4., B.5.), a Monell claim

9    based on either such violation necessarily fails.  See Villegas v. Gilroy Garlic Festival

10   Ass'n, 541 F.3d 950, 957 (9th Cir. 2008) (holding "[b]ecause there is no constitutional

11   violation, there can be no municipal liability").

12       Second, Wagda has failed to allege facts sufficient to support the above-quoted

13   conclusory allegation that either Town or County has a custom or practice of not giving

14   effect to detainees' assertions of Fifth or Sixth Amendment rights.  The most Wagda

15   alleges is that, during both the October and December arrests, the officers at the scene

16   continued to question him after he invoked his right to remain silent (see, e.g., FAC

17   ¶¶ 24, 28, 71–73), which allegations do not suffice to show conduct "so persistent and

18   widespread" that it "has become a traditional method of carrying out policy," see Trevino,

19   99 F.3d at 918,[29] and Wagda's allegation that Town and County have failed to procure

20

21       [28] Under such circumstances, the third and fourth elements, namely, deliberate
     indifference and causation, are not implicated.  The Court notes, however, that the FAC's
22   formulaic allegations as to those elements are insufficient.  See Dougherty, 654 F.3d at
     900–01.
23
         [29] Wagda requests the Court "take judicial notice" of "all docketed materials" in
24   several unrelated cases and purports to "incorporate[] by reference all allegations set
     forth in the complaint . . . of each of those cases . . ." (FAC ¶ 22) to support his allegation
25   that Town and County "have engaged in a pervasive pattern of civil rights violations" (id.)
     and a "pattern of constitutional violations" (id. ¶ 165).  Wagda cites no authority for such a
26   broad request, nor does he submit any of the referenced materials, including the
     complaints whose allegations he purports to incorporate, let alone cite any authority
27   suggesting the content of such documents can be judicially noticed for the truth of the
     matters stated therein.  Accordingly, the Court DENIES said request for judicial notice.
28   Moreover, his attachment of what he describes as "informal allegations of police
     misconduct" (see FAC ¶ 22(c) & Ex. A), comprising rhetorical questions, opinions, and

1    and implement necessary technology is wholly unsupported by any underlying factual

2    allegations.

3        **3.    Targeting perceived addicts for arrest (FAC ¶ 164(b))**

4        Wagda alleges defendants have a "custom or practice of targeting for arrest

5    people perceived to be addicted to the use of controlled substances, as a pretext for

6    punishing them for property crimes" that defendants, without probable cause or

7    reasonable suspicion, assume they are committing.  (See FAC ¶ 164(b) (emphasis

8    omitted).)

9        Here, again, the FAC fails to establish the first two elements of a Monell claim.

10   First, as discussed above, see supra part A.2.e., Wagda has failed to allege facts

11   showing he was deprived of a constitutional right.  See Villegas, 541 F.3d at 957.

12   Second, although the FAC alleges Jimenez made comments about wanting to send

13   "junkies" to jail because they commit property crimes to support their habit (see FAC

14   ¶ 41), such allegations do not suffice to show conduct "so persistent and widespread"

15   that it "has become a traditional method of carrying out policy."  See Trevino, 99 F.3d at

16   918.[30]

17       **4.    Not releasing detainees during overnight hours (FAC ¶ 164(c))**

18       Wagda alleges defendants have a "policy, custom or practice of not releasing

19   certain detainees from MDF during the overnight hours, out of regard for the wishes [of

20   the] City of Martinez and notwithstanding their constitutional rights and the purposes for

21   which they are being detained."  (FAC ¶ 164(c).)  In particular, he alleges that: (1) during

22

23   ――――――――――――――――――――――

     essentially anonymous hearsay statements, are not sufficiently factual to be considered
24   for the truth of any matters referenced therein, and, in any event, the relevance of any
     such material remains unclear.

25       [30] The Court is not persuaded, however, by County defendants' contention that
26   Wagda lacks standing because he was never charged with a property crime.  Wagda
     claims defendants target perceived drug addicts for arrest on the assumption they are
27   committing property crimes and as a way to either punish them for or prevent them from
     committing such crimes.  (See FAC ¶ 164(b); see also id. 15:2–5 & ¶ 41.)  Such claim
28   does not depend on whether or not Wagda was actually charged with a property crime.

United States District Court
Northern District of California

his detention, in the evening, an officer told the occupants of his cell "they would all be processed and released" (see id. ¶ 63); (2) "an inmate experienced in such matters" told him that, "at MDF, County has a policy or practice of not releasing inmates during the overnight hours, unless an inmate has been bailed out or is otherwise to be released pursuant to court order, because the City of Martinez does not want inmates released onto its streets at times when public transportation is not available" (see id.); (3) his release "did not occur until approximately 24 hours after his original detention" at the police station (see id.); and (4) his release was "delayed pursuant to" said overnight-detention policy or practice (see id. 21:7–8).

As noted, Wagda has not alleged, as against a named defendant, a violation based on the length of his detention. Even assuming Wagda can allege such a violation by a later-named Doe defendant, however, Wagda has failed to allege facts sufficient to establish the second Monell element, the existence of a municipal policy or practice. He does not allege any facts indicating Town has such a policy or practice (see FAC ¶ 63), and, as to County, Wagda's allegations are insufficient, as he relies exclusively on the unsubstantiated hearsay remarks of an unidentified inmate (see id.).

### 5.  Requiring detainees to remain seated (FAC ¶ 164(d))

Wagda alleges defendants have a "policy requiring detainees of the Holding Cell at MDF to remain seated in chairs for extremely and unreasonably long periods of time, as evidenced by a wall sign in such cell stating a rule substantially similar to 'REMAIN SEATED AT ALL TIMES.'"  (Id. ¶ 164(d).)

Wagda has failed, however, to allege facts sufficient to show he was thereby deprived of a constitutional right during either his October or December detentions at MDF.  See Villegas, 541 F.3d at 957.  Notably, the FAC makes only broadly framed references to the circumstances under which Wagda was required to remain seated. (See, e.g., FAC ¶ 63 (alleging Wagda "generally was required to remain seated in the Holding Cell"); id. ¶ 143(i) (alleging Wagda was "forc[ed] . . . to endure extremely long-term confinement in a seated position in a chair (i.e., for substantially all of his time at

MDF).")  As discussed above, see supra part B.3.i., given the absence of any factual allegation beyond lengthy seating, the FAC fails to plead a constitutional violation.

Moreover, although Wagda has not identified who was responsible for the sign, even assuming it was Town or County, Wagda has not alleged facts sufficient to meet the third and fourth elements, deliberate indifference and causation, as the FAC contains no facts indicating defendants had reason to expect the sign would be enforced in such a way as to rise to the level of a constitutional violation.

### 6.   Being deliberately indifferent to suspects' constitutional rights (FAC ¶ 164(e))

Wagda alleges defendants have a "custom or practice of general deliberate indifference to suspects' constitutional rights." (FAC ¶ 164(e).)  In support thereof, Wagda points to other cases and incidents that he alleges demonstrate "widespread misconduct among many patrol officers of Town" and "personal misconduct" by Livingston.  (See id.)

Wagda has failed to allege facts sufficient to show either Town or County has any custom or practice of general deliberate indifference to suspects' constitutional rights.  As discussed above, the Court has denied Wagda's improper request to incorporate all docketed materials in the cases he cites, and, in any event, Wagda's conclusory descriptions of the content of such materials fail to show any municipal policy or practice was the "moving force" behind the misconduct asserted.  See Dougherty, 654 F.3d at 900–01.

### 7.   Not using technology for information regarding speed trap locations (FAC ¶ 164(f))

Wagda alleges defendants have failed "to procure and implement computer database and information technology systems necessary to properly record and distribute information regarding the location of statutory 'speed traps' . . . ."  (FAC ¶ 164(f).)  The claim is deficient on two grounds.

First, Wagda has failed to allege facts sufficient to show he was deprived of a constitutional right; thus, he cannot establish municipal liability.  See Villegas, 541 F.3d at 957.  As discussed above, see supra part B.3.a., Rossberg's stop did not violate Wagda's

United States District Court
Northern District of California

1  Fourth Amendment rights, and Wagda has identified no other event on which this

2  subclaim may be based.

3      Second, the subclaim fails because it is wholly unsupported by any underlying

4  factual allegations.  The FAC lacks any factual description of the then-existing manner of

5  record-keeping or any facts showing any such system was inadequate.  Wagda merely

6  notes that a "Traffic Engineering Associate employed by Town is one custodian of the

7  survey" for the part of the roadway where he was stopped (see FAC ¶ 66 n.8.), and his

8  allegation that Rossberg did not personally know the "timing and repository of [that]

9  survey" (see id. ¶ 164(f)) does not suffice to show the existence of any deficient municipal

10  policy or practice with respect to the distribution of such information.

11      **8.   Disregarding the law in exercising booking discretion (FAC ¶ 164(g))**

12      Wagda alleges defendants have a "custom or practice of disregarding California

13  law and constitutional precedent in exercising discretion to book an arrestee into jail."  (Id.

14  ¶ 164(g).)  In support thereof, Wagda points to: (1) Rossberg and a Doe defendant's

15  "attempt[] to use such discretion as leverage to induce [ ] Wagda's waiver of his Fourth

16  and Fifth Amendment rights" (id.); and (2) Rossberg's "standard practice" of sending

17  "anybody with their second DUI or more" to MDF (id.).

18      Wagda has failed to allege facts sufficient to show either Town or County has the

19  alleged booking custom or practice.  All of Wagda's factual allegations go to the acts of

20  two individual officers, Rossberg and a Doe defendant (see id. 27:20–21 & ¶¶ 90–92, 94–

21  95); there is nothing in the FAC to suggest a broader custom of or practice by either

22  Town or County.

23      **9.   Using non-compliant DUI search warrant forms (FAC ¶ 164(h))**

24      Wagda alleges defendants have a "practice or custom of using a DUI search

25  warrant form not in compliance with the requirements of Cal. Penal Code Section

26  1524(a)(13) and/or the Fourth Amendment."  (Id. ¶ 164(h).)  In that regard, Wagda

27  alleges the form "misstates the probable cause requirement . . . and does not particularly

28  describe the place to be searched, authorize a bodily intrusion search or specify a

1     particular medical procedure." (<u>Id.</u> ¶ 116.)[31]

2         Wagda has failed to allege facts sufficient to show he was deprived of a

3 constitutional right and, consequently, he cannot establish municipal liability. <u>See</u>

4 <u>Villegas</u>, 541 F.3d at 957. First, to the extent this subclaim is based on an alleged

5 violation of state law, the claim fails as such a violation does not suffice to show a

6 violation of a federal constitutional right. <u>See</u> <u>Baker</u>, 443 U.S. at 146–47. Second, to the

7 extent the subclaim is based on an alleged violation of the Fourth Amendment, Wagda

8 again fails to plead an underlying constitutional violation, as Wagda expressly limits his

9 constitutional challenge to the form's "boilerplate content," not its "customized content[]"

10 (Pl.'s Opp'n to County MTD at 23–24), and has not included any facts showing the form

11 was intended to be used alone, nor explained how any alleged deficiency therein had any

12 bearing on the judge's decision to issue the warrant in its final form.

13       **10.    Conclusion**

14         For the reasons stated above, the Tenth Claim is DISMISSED in its entirety, and

15 Wagda is granted leave to amend said claim.

16 **D.    Thirteenth Claim: "Invasion of Privacy"**

17         In his Thirteenth Claim, which pertains to his December arrest, Wagda alleges

18 Jimenez, Rossberg, and Stapleton invaded his privacy with respect to his "bodily

19 integrity, personal medical information and information contained in his confidential arrest

20 reports regarding the December [a]rrest." (<u>See</u> FAC ¶ 176–77.) In particular, Wagda

21 alleges said defendants invaded his privacy when: (1) Rossberg, with Stapleton's

22 participation, took his pulse (<u>see</u> <u>id.</u> ¶ 178); (2) Rossberg directed a technician to draw

23

24         [31] The subject form, titled "Search Warrant: DUI Blood Draw," was used by

25 Rossberg to request Wagda's blood draw. (<u>See</u> County Defs.' Req. for Jud. Notice, Ex. E.) The Court hereby GRANTS County defendants' request for judicial notice as to said

26 form, as the FAC refers to its contents and Wagda does not contest its authenticity. (<u>See</u> Pl.'s Mot. to Convert at 8; <u>see also</u> <u>Davis v. HSBC Bank Nevada, N.A.</u>, 691 F.3d 1152,

27 1160 (9th Cir. 2012) (holding, on motion to dismiss, courts may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions")

28 (internal quotation and citation omitted).)

1   his blood and directed County personnel to test it for drug and alcohol content (see id.

2   ¶ 179); and (3) Rossberg and Jimenez disclosed to the State Bar "the arrest report

3   relating to the December [a]rrest" (see id. ¶ 180).  He also alleges Town and County are

4   liable, under § 815.2 of the California Government Code, for the above-referenced

5   invasions of privacy.

6          To state a claim for invasion of privacy under the California constitution, a plaintiff

7   must establish: "(1) a legally protected privacy interest; (2) a reasonable expectation of

8   privacy in the circumstances; and (3) conduct by defendant constituting a serious

9   invasion of privacy."  Hill v. Nat'l Collegiate Athletic Ass'n, 7 Cal. 4th 1, 39–40 (1994).

10                 **1.     Pulse Taking and Blood Draw**

11         With respect to Wagda's body and personal medical information, County

12   defendants' sole contention is that the basis for any claim predicated thereon is "unclear."

13   (See County MTD at 20.)  The Court disagrees.  As to "bodily integrity," the FAC

14   sufficiently identifies two bodily intrusions: the taking of Wagda's pulse (see FAC ¶¶ 80–

15   81, 178) and the drawing of his blood (see id. ¶ 179).  As to Wagda's "personal medical

16   information," to the extent Wagda is relying on the testing of his blood (see id. ¶ 179), the

17   basis for Wagda's claim likewise is sufficiently clear; to the extent Wagda seeks to rely on

18   any other conduct, however, the Court finds Wagda has not adequately pled such basis.

19                 **2.     Disclosure of December Arrest Report**

20         With respect to Wagda's December arrest report, County defendants contend

21   "[a]ny disclosure to the State Bar is privileged under the 'common interest' privilege."

22   (See County MTD at 21.)

23         Under the common interest privilege, "[a] privileged publication or broadcast is one

24   made . . . [i]n a communication, without malice, to a person interested therein, (1) by one

25   who is also interested, or (2) by one who stands in such a relation to the person

26   interested as to afford a reasonable ground for supposing the motive for the

27   communication to be innocent, or (3) who is requested by the person interested to give

28   the information."  Cal. Civ. Code § 47(c); Kashian v. Harriman, 98 Cal. App. 4th 892, 914

1   (2002) (noting "Civil Code section 47, subdivision (c) codifies the common law privilege of

2   common interest").  "Application of the privilege involves a two-step analysis," whereby

3   "[t]he defendant has the initial burden of showing" the statement in question "was made

4   on a privileged occasion," after which the burden shifts to the plaintiff to show the

5   statement was made with malice.  See Kashian, 98 Cal. App. 4th at 915.

6          Here, defendants have failed to meet their initial burden, as the facts pleaded in

7   the FAC do not support a finding that the common interest privilege is applicable.[32]

8   Accordingly, this subclaim is not subject to dismissal on such ground.  See id.

9   **E.       Seventeenth Claim: "Injunctive Relief and Declaratory Relief"**

10         In his Seventeenth Claim, Wagda seeks injunctive and declaratory relief, on two

11  different but potentially related bases, against Jimenez, Rossberg, Neabeack, Stapleton,

12  Town, County, Governor Brown, and Attorney General Harris.  (See FAC 59:18–21.)  In

13  particular, Wagda asserts that: (1) defendants, excepting Governor Brown and Attorney

14  General Harris, have a "continuing pattern" of depriving citizens of Town and County of

15  various constitutional rights, which pattern is "enforced by deliberate supervisorial

16  indifference to the officers' foreseeable constitutional consequences" (see id. ¶ 200); and

17  (2) the "continuing threat of enforcement by [d]efendants" of § 11550's "criminal

18  prohibition on 'being under the influence' of certain controlled substances . . . is chilling

19  the exercise" of his and others' First Amendment rights (see id. ¶ 201).  As relief, Wagda

20  seeks: (1) a declaration that § 11550's prohibition on "being under the influence" of

21  certain controlled substances is facially unconstitutional under the First Amendment (see

22  id. at 61:15–18);[33] (2) an injunction prohibiting defendants "from enforcing or threatening

23

24         [32] In light of such conclusion, the Court does not reach County defendants'
       argument that Wagda cannot show Rossberg or Jimenez acted with malice.

25         [33] In relevant part, section 11550 bars a person from "us[ing], or be[ing] under the
26     influence of any controlled substance [referenced therein] except when administered by
       or under the direction of a person licensed by the state to dispense, prescribe, or
27     administer controlled substances."  Cal. Health & Safety Code § 11550(a).  Wagda
       challenges only § 11550's prohibition on "being under the influence," not the "use," of
       such controlled substances.  (See Pl.'s Opp'n to State MTD at 12.)
28

1    to enforce" such statutory prohibition (see id. at 61:19–23); and (3) "[o]ther injunctive

2    relief as requested herein"[34] (see id. at 61:24).

3         County and State defendants both invoke standing, albeit on different grounds, to

4    challenge Wagda's Seventeenth Claim.  Additionally, State defendants challenge said

5    claim under the Eleventh Amendment.

6         At the outset, the Court notes that only a limited number of claims against County

7    defendants are going forward at this time.  Accordingly, aside from his facial challenge to

8    § 11550, Wagda may seek declaratory and injunctive relief only with respect to those

9    surviving or unchallenged claims.

10        **1.  Standing**

11        County defendants challenge Wagda's standing on the basis that his allegations

12   fail to show "he is realistically threatened with future constitutional violations."  (See

13   County MTD at 20 (internal quotation and citation omitted).)  State defendants contend

14   Wagda's allegations are "directed only at local law enforcement" (see State MTD at 8)

15   and, consequently, that Wagda lacks standing to sue either Governor Brown or Attorney

16   General Harris.

17        To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in

18   fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

19   likely to be redressed by a favorable decision."  Spokeo, Inc. v. Robins, 136 S.Ct. 1540,

20   1547 (2016).  An injury in fact is one that is "concrete, particularized, and actual or

21   imminent."  Clapper v. Amnesty Internat'l, USA, 133 S.Ct. 1138, 1147 (2013) (internal

22   quotation and citation omitted).  "[A]t the pleading stage, the plaintiff must clearly . . .

23   allege facts demonstrating each element" of standing.  Spokeo, Inc., 135 S.Ct. at 1547

24   (internal quotation and citation omitted).

25        In general, with respect to the first element, a "threatened injury must be certainly

26   impending to constitute injury in fact[;] . . . [a]llegations of possible future injury are not

27   _____

28        [34] Wagda does not specify what any such "other" injunctive relief would be.

United States District Court
Northern District of California

1    sufficient." Clapper, 133 S.Ct. at 1147 (internal quotation, citation, and emphasis

2    omitted);[35] see City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (holding plaintiff

3    must allege "threat of injury" that is "real and immediate, not conjectural or hypothetical"

4    (internal quotation and citation omitted)).  In the First Amendment context, however, the

5    Supreme Court "has dispensed with rigid standing requirements," Human Life of

6    Washington Inc. v. Brumsickle, 624 F.3d 990, 1000 (9th Cir. 2010) (internal quotation and

7    citation omitted), and has recognized a plaintiff's "self-censorship" as a sufficient injury

8    "as long as it is based on an actual and well-founded fear that the challenged statute will

9    be enforced" against such plaintiff, id. at 1001.

10        Wagda alleges that, until the requested relief is granted, he "has reason to believe

11   that his rights . . . will continue to be threatened and [he] will suffer serious and

12   irreparable injury by the threat of loss of his fundamental Constitutional rights."  (FAC

13   ¶ 202.)  In particular, he alleges that he lives within County's jurisdiction and is

14   "frequent[ly] presen[t]" in Town and County (see id.), and, consequently, that: (1) he "is

15   likely to be subject to traffic stops and attendant interrogation" by Town and County law

16   enforcement "in the ordinary course, including lawfully initiated traffic stops where he has

17   not engaged in any culpable conduct" (see id.); and (2) his speech "is being chilled and is

18   likely to continue being chilled," by various past experiences and the "continuing

19   enforceability" of § 11550's prohibition against "being under the influence,"

20   notwithstanding his compliance with such statute (see id.).

21        With respect to his fear of being stopped again, and, in the course thereof,

22   subjected to various violations of his constitutional rights, Wagda's allegations are

23   conjectural and thus insufficient to show he faces imminent injury.  See, e.g., Lyons, 461

24   F.3d at 104–05 (holding plaintiff's fear of again being subjected to chokehold insufficient

25

26        ────────────────

27        [35] The Supreme Court has acknowledged that its cases "do not uniformly require"
     plaintiffs to show "it is literally certain that the harms they identify will come about," noting
     "[i]n some instances, we have found standing based on a substantial risk that the harm
28   will occur."  See Clapper, 133 S.Ct. at 1150 n.5 (internal quotation and citation omitted).

United States District Court
Northern District of California

1    to warrant either declaratory or injunctive relief; finding plaintiff failed to show "real and

2    immediate threat" that he would be stopped again for traffic violation, or any other

3    offense, by any officer who would choke him).  Notably, Wagda does not allege he has

4    even been stopped by a Town or County law enforcement officer since his arrest in

5    December 2014, and his allegation that County defendants have a "continuing pattern" of

6    "depriving [citizens] of their [constitutional] rights" (see FAC ¶ 200) adds nothing of

7    substance to the FAC.  See Lyons, 461 F.3d at 105 (holding "additional allegation" that

8    police "routinely apply chokeholds" in situations where they are not lawfully allowed "falls

9    far short of the allegations that would be necessary" for Article III standing).

10        Second, Wadga's allegations of current and "likely" future chilled speech, whether

11   related to his past experiences or the continuing enforceability of § 11550, likewise are

12   insufficient to show he faces imminent injury.  The paragraphs of the FAC Wagda

13   identifies as supporting this claim do not plead a realistic threat of future harm.  (See Pl.'s

14   Opp'n to County MTD at 24; FAC ¶ 29 (alleging defendants' "unlawful interrogation

15   techniques . . . are likely to continue to have . . . a chilling effect upon [ ] Wagda's future

16   speech); id. ¶ 49 (alleging Wagda's "speech was chilled" in February 2016, when he

17   decided not to report to police "a suspicious person," because he feared being detained

18   and arrested "due to the possibility that his reporting activity could be misinterpreted as

19   indicating an abnormal mental state (even though [he] was in compliance with the terms

20   of Section 11550)"); id. ¶ 93 (alleging, with respect to MDF booking questions in

21   December, Wagda did not invoke his Fifth Amendment right against self-incrimination

22   due to his October experience of retaliation for not answering such questions).)  As a

23   result, such allegations do not establish the imminent injury required for standing.  See

24   Lyons, 461 U.S. at 107 n.8 ("It is the reality of the threat of repeated injury that is relevant

25   to the standing inquiry, not the plaintiff's subjective apprehensions.") (emphasis in

26   original).

27        Moreover, § 11550, as noted, prohibits a person's use and/or being under the

28   influence of a controlled substance for which such individual does not have a prescription

United States District Court
Northern District of California

1    from a licensed provider.  Here, Wagda acknowledges he has a prescription for the

2    covered medication he takes, and the FAC contains no allegations to support a finding

3    that, under such circumstances, he is likely to be arrested or prosecuted for a violation of

4    said statute.

5        Accordingly, the Court finds Wagda lacks standing to assert the Seventeenth

6    Claim.[36]

7        **2.    Eleventh Amendment Immunity**

8        In light of the above finding with respect to standing, the Court does not address

9    herein State defendants' arguments in support of dismissal under the Eleventh

10   Amendment, with the exception of said defendants' arguments with respect to Governor

11   Brown, which the Court finds persuasive.  See Ex parte Young, 209 U.S. 123, 157 (1908)

12   (holding Eleventh Amendment bars claim for injunctive relief against state officer unless

13   state officer has "some connection with the enforcement" of allegedly unconstitutional

14   statute); see also Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729

15   F.3d 937, 943 (9th Cir. 2013) (holding, where plaintiffs sought to enjoin enforcement of

16   allegedly unconstitutional statute, Governor Brown "entitled to Eleventh Amendment

17   immunity because his only connection to [statute] [was] his general duty to enforce

18   California law").

19       **3.    Conclusion**

20       For the reasons stated above, Wagda's Seventeenth Claim is DISMISSED, and,

21   with the exception of Governor Brown, and with the additional exception of Livingston and

22   Simpkins to the extent each is sued in his official capacity, see Janicki Logging Co., 42

23   F.3d at 566, Wagda is granted leave to amend.

24   //

25   //

26

27       [36] In light of such finding, the Court need not address the parties' respective
     arguments as to the merits of Wagda's facial challenge to § 11550.
28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**CONCLUSION**

For the reasons stated above,

1.    County defendants' motion to dismiss is GRANTED in part and DENIED in part as set forth above.

2.    State defendants' motion to dismiss is GRANTED.

3.    Wagda's motion to convert is DENIED.

4.    Leave to amend is granted as set forth above.  In any amended complaint, rather than incorporating all preceding factual allegations, Wagda shall identify, in each numbered claim, or, if a claim is divided into subparts, in each such subpart, the specific clause of any constitutional amendment on which he relies, as well as the specific facts on which such claimed violation is based, and the particular defendant(s) alleged to have committed such violation.

5.    Wagda's Second Amended Complaint, if any, shall be filed no later than November 14, 2016.  In any Second Amended Complaint, Wagda may amend to cure the deficiencies noted above but may not add new claims or defendants without first obtaining leave of court.  See Fed. R. Civ. P. 15(a)(2); Fed. R. Civ. P. 16(b)(4).

6.    If Wagda does not file a Second Amended Complaint within the time provided, the instant action will proceed on the remaining claims in the First Amended Complaint.

**IT IS SO ORDERED.**

Dated: October 24, 2016

MAXINE M. CHESNEY
United States District Judge