IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DONALD CLOYCE WAGDA,

         Plaintiff,

    v.

TOWN OF DANVILLE, et al.,

         Defendants.

Case No. 16-cv-00488-MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Re: Dkt. No. 92

Before the Court is the Motion for Judgment on the Pleadings, filed December 16, 2016, by defendants Town of Danville ("Town"), County of Contra Costa ("County"), Mike Jimenez ("Jimenez"), Emily Neabeack ("Neabeack"), Tom Rossberg ("Rossberg"), and Steven Stapleton ("Stapleton") (collectively, "defendants"), with respect to plaintiff Donald Cloyce Wagda's ("Wagda") First Amended Complaint ("FAC"), filed March 29, 2016. Plaintiff has filed opposition, to which defendants have replied; additionally, with leave of court, defendants have filed a supplemental brief and plaintiff has filed a brief in response thereto. The instant motion is brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.

**BACKGROUND**

By prior order, filed October 24, 2016 ("October 24 Order"), the Court granted in part and denied in part defendants' motion to dismiss the FAC. See October 24 Order.[1]

---

[1] As the parties have been identified and the relevant facts have been set forth, in detail, in the October 24 Order, the Court has not included that information herein.

By their motion for judgment on the pleadings, defendants seek an order dismissing as to each of them "the majority of Wagda's remaining claims." (See Defs.' Motion for Judgment on the Pleadings ("MJP") at 2:5–6.)

The claims at issue in the instant motion are the following: (1) three federal claims under 42 U.S.C. § 1983 for violation of Wadga's Fourth Amendment rights in connection with his arrests in October 2014 and December 2014 (see FAC ¶¶ 134(a), 143(e), 143(g)) ("Third and Fifth Claims"); (2) a federal claim under 42 U.S.C. § 1983 for violation of the "Doctrine of Unconstitutional Conditions" ("Ninth Claim") (see id. ¶¶ 159–162); (3) a state claim for "false arrest" ("Eleventh Claim") (see id. ¶¶ 167–170); (4) a state claim for "false imprisonment" ("Twelfth Claim") (see id. ¶¶ 171–174); (5) a state claim for invasion of privacy ("Thirteenth Claim") (see id. ¶¶ 175–182); (6) a state claim for negligence ("Fourteenth Claim") (see id. ¶¶ 183–187); (7) a state claim for violation of civil rights under § 52.1(b) of the California Civil Code, in connection with the December arrest ("Fifteenth Claim") (see id. ¶¶ 188–193); and (8) a state claim for violation of civil rights under § 52.1(b) of the California Civil Code, based on "patterns and policies of conduct" ("Sixteenth Claim") (see id. ¶¶ 194–198).

**LEGAL STANDARD**

In contrast to Rule 12(b) of the Federal Rules of Civil Procedure, which provides for the filing of a motion to dismiss prior to the filing of an answer, Rule 12(c) provides that "[a]fter the pleadings are closed[,] . . . a party may move for judgment on the pleadings." See Fed. R. Civ. P. 12(c). "The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing." See Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). As the motions are "functionally identical," federal courts, in considering motions under Rule 12(c) that are based on an asserted failure to state a claim, apply the same analysis as that applicable to motions under Rule 12(b)(6). See id.

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

under a cognizable legal theory." <u>See</u> <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." <u>See</u> <u>id.</u> Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>See</u> <u>id.</u> (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material factual allegations in the complaint, and construe them in the light most favorable to the nonmoving party. <u>See</u> <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).[2] "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" <u>Twombly</u>, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

As discussed below, defendants challenge Wagda's Third and Fifth Claims, his Ninth Claim, and his Eleventh through Sixteenth Claims. The Court addresses each

---

[2] Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the complaint. <u>See</u> <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). A district court may, however, consider documents that are subject to judicial notice. <u>See</u> <u>Mack v. South Bay Beer Distribs., Inc.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986). Wagda's unopposed request for judicial notice, filed January 7, 2017, is hereby GRANTED as to both documents attached thereto, specifically: (1) a copy of the search warrant and supporting affidavit (the "SW/Aff.") for the blood draw (<u>see</u> Pl.'s Req. for Jud. Not. Ex. A); and (2) a copy of a police report regarding the December arrest (<u>see</u> <u>id.</u> Ex. B). Similarly, defendants' unopposed request, filed January 13, 2017, for judicial notice of a press release (<u>see</u> Defs.' Req. for Jud. Not. Ex. A) is hereby GRANTED.

3

challenged claim in turn.

**A.     Third and Fifth Claims: Fourth Amendment**

Defendants challenge Wagda's Fourth Amendment claims, which are set forth in Wagda's Third Claim (see FAC ¶ 134(a)) and his Fifth Claim (see id. ¶ 143(e), (g)), and arise, respectively, out of his October arrest and his December arrest.

As noted in the October 24 Order, to state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

"An officer's liability under section 1983 is predicated on his integral participation in the alleged violation."  Blankenhorn v. City of Orange, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (internal quotation and citation omitted).  "Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability."  Hansen v. Black, 885 F.2d 642, 645–46 (9th Cir. 1989).  Rather, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  Iqbal, 556 U.S. at 677.

**1.     Booking Wagda into MDF in October 2014 (FAC ¶ 134(a))**

In his Third Claim, Wagda alleges Jimenez and Neabeack violated his Fourth Amendment rights in connection with his October arrest, by "[b]ooking [him] into MDF instead of citing and releasing him, motivated by retaliatory animus."  (See FAC ¶ 134(a); see also id. ¶ 38.)  Wagda "concedes this Fourth Amendment claim," which he describes as "synonymous" with his "First Amendment retaliation claim" (see Pl.'s Opposition to MJP ("Opp'n") at 6:10–11), and, consequently, Wadga's Third Claim is DISMISSED.

**2.     Booking Wagda into MDF in December 2014 (FAC ¶ 143(e))**

In his Fifth Claim, Wagda alleges Jimenez, Rossberg, Neabeack, and Stapleton violated his Fourth Amendment rights in connection with his December arrest, by "[b]ooking [him] into MDF instead of citing and releasing him, in retaliation for his exercise of his Fifth Amendment right to remain silent and his Fourth Amendment right to require a

4

warrant for a blood draw." (See FAC ¶ 143(e); see also Opp'n at 6:13 (characterizing claim as "Fourth Amendment retaliation claim").)

The Court has already dismissed defendants Jimenez, Neabeack, and Stapleton from the above-referenced claim, for the reason that the allegations are insufficient to plead their participation or involvement in the alleged misconduct. See October 24 Order at 18–19.

Turning to Rossberg, the Court finds the claim is not cognizable as a Fourth Amendment violation,[3] other than under the doctrine of unconstitutional conditions, on which Wagda's Ninth Claim, alleging the same conduct, is based. See infra Part B. Neither of the cases on which Wagda relies recognizes a separate claim for retaliation under the Fourth Amendment, see Birchfield v. North Dakota, 136 S.Ct. 2160 (2016); Lebron v. Sec'y, Fla. Dep't of Children & Families, 710 F.3d 1202 (11th Cir. 2013), let alone where such a claim is duplicative of a claim brought under the doctrine of unconstitutional conditions.

Accordingly, to the extent Wagda's Fifth Claim is based on the allegations in ¶ 143(e), the claim is DISMISSED without further leave to amend. See Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 2004) (holding leave to amend need not be granted where amendment of complaint would "constitute[] an exercise in futility") (internal quotation and citation omitted).

### 3. Ordering blood draw (FAC ¶ 143(g))

In his Fifth Claim, Wagda alleges Jimenez, Rossberg, Neabeack, and Stapleton violated his Fourth Amendment rights in connection with his December arrest, by "[o]rdering [a] . . . blood draw . . . in bad faith reliance upon a constitutionally defective, unlawfully issued search warrant procured by means of a false and misleading affidavit." (See FAC ¶ 143(g).) In particular, Wagda alleges, Rossberg submitted an affidavit

---

[3] By contrast, as the Court previously found, Wagda's retaliatory booking allegations plead a claim under the First Amendment. See October 24 Order at 19.

"containing numerous material misrepresentations and omissions" (see id. ¶ 96) concerning his speed, pulse rate measurements, and ability to make decisions and answer questions (see id. ¶¶ 97–103).[4]

"A search warrant, to be valid, must be supported by an affidavit establishing probable cause." See United States v. Stanert, 762 F.2d 775, 778 (9th Cir. 1985) (holding court, in determining validity of warrant, "is limited to the information and circumstances contained within the four corners of the . . . affidavit"). In assessing whether probable cause exists, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." Id. at 238–39 (alteration in original) (internal quotation and citation omitted).

A facial showing of probable cause may, however, be challenged. In particular, government investigators can be held "liable for violating the Fourth Amendment when they submit false and material information in a warrant affidavit." See Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002). Where a claim is based on such "judicial deception," the plaintiff is required to show: (1) the affidavit "contained misrepresentations or omissions material to the finding of probable cause"; and (2) "the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." See Bravo v. City of Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011). To assess the materiality of a false statement or misleading omission, the district court must determine "whether the affidavit, once corrected and supplemented, would provide a

---

[4] To the extent Wagda's claim is based on alleged violations of state law and/or the "boilerplate content" of the warrant form (see FAC ¶¶ 113–116; Pl.'s Opp'n to County Mot. to Dismiss at 24:1), such claim fails for the reasons set forth in the Court's prior order. See October 24 Order at 42–43.

magistrate with a substantial basis for concluding that probable cause existed." See Stanert, 762 F.2d at 782. "If probable cause remains after amendment, then no constitutional error has occurred." Bravo, 665 F.3d at 1084.

The FAC alleges Rossberg arrested Wagda for driving under the influence of drugs ("DUI") in violation of § 23152(e) of the California Vehicle Code, and that Wagda was subsequently charged with said violation.[5] Pursuant to § 23152, "[i]t is unlawful for a person who is under the influence of any drug to drive a vehicle." Cal. Veh. Code § 23152(e). "To be under the influence within the meaning of [§ 23152], the . . . drug(s) must have so far affected the nervous system, the brain, or muscles as to impair to an appreciable degree the ability to operate a vehicle in a manner like that of an ordinarily prudent and cautious person in full possession of his faculties." Espinoza v. Shiomoto, 10 Cal. App. 5th 85, 101–02 (2017) (internal quotation and citation omitted).

The Court has already dismissed defendants Jimenez, Neabeack, and Stapleton from the above-referenced claim, for the reason that the allegations are insufficient to plead their participation or involvement in the alleged misconduct. See October 24 Order at 18–19. As to Rossberg, the Court finds the claim is, as discussed below, also subject to dismissal.

Rossberg's affidavit states, inter alia, that: (1) prior to Wagda's arrest, Rossberg noticed Wagda had dilated eyes and a "sweaty look to his face," appeared "nervous and jittery," and was "hyper attentive" (see SW/Aff. at 2); (2) prior to Wagda's arrest, Wagda refused "to perform Field Sobriety Tests" ("FSTs") (see id.) (3) prior to Wagda's arrest, a records check showed Wagda had been arrested "recently" for being under the influence

---

[5] Wagda was also charged with being under the influence of a controlled substance in violation of § 11550(a) of the California Health & Safety Code. (See FAC ¶ 119.) Section 11550(a) bars a person from "us[ing], or be[ing] under the influence of any controlled substance [referenced therein] except when administered by or under the direction of a person licensed by the state to dispense, prescribe, or administer controlled substances." Cal. Health & Safety Code § 11550(a). "[B]eing under the influence within the meaning of . . . [§] 11550 merely requires that the person be under the influence in any detectable manner." Gilbert v. Mun. Ct., 73 Cal. App. 3d 723, 727 (1977).

of a controlled substance, which arrest, Wagda told Rossberg, was for DUI and charges were pending (see id.); (4) at the police station, after Wagda's arrest, Rossberg saw Wagda's eyelids "twitching rapidly" (see id.); and (5) Rossberg has "participated in or conducted no less than 250 DUI investigations," has "attended several drug influence classes," and is a "Drug Recognition Expert" (see id.).

The Court finds the affidavit contains statements sufficient to establish a "fair probability" that evidence of the offense for which Wagda was arrested would be found in Wagda's blood,[6] thus providing the magistrate with the requisite "substantial basis" for concluding there was probable cause for the blood draw. See Gates, 462 U.S. at 238–39; see also Espinoza, 10 Cal. App. 5th at 102, 103 (holding, with respect to § 23152, "[e]vidence of actual impairment may include the driver's appearance" (internal quotation and citation omitted); further holding "refusal to submit to [FSTs] is properly treated as evidence of consciousness of guilt" (emphasis omitted)); People v. Jimenez, 242 Cal. App. 4th 1337, 1346, 1355 (2015) (listing dilated pupils, alertness, and being nervous and jittery among symptoms relevant to driving under influence of drugs); People v. Bui, 86 Cal. App. 4th 1187, 1191–92 (2001) (listing eyelid tremors among symptoms relevant to driving under influence of drugs); People v. Henderson, 2009 WL 2050241, *4, 7 (Cal. Ct. App. 2009) (listing sweating among symptoms relevant to driving under influence of drugs); People v. Aho, 166 Cal. App. 3d 984, 992 (1985) (holding suspect's "narcotic arrest record" and officer's "training and experience as a narcotics investigator" relevant to magistrate's determination of probable cause for search warrant).

Although Wadga argues that the truth of the affidavit "remains disputed" (see Pl.'s

---

[6] Although, as Wagda points out, Rossberg, in the affidavit, did not specifically state that Wagda was "unlawfully under the influence of any of the controlled substances specified in [§] 11550" (see Opp'n at 9:19–20), or that he was "driving under the influence of alcohol and/or any drug in violation of [§] 23152" (see id. at 9:21–22), Rossberg's affidavit makes clear that he "arrested [Wagda] for DUI" (see SW/Aff. at 2); in addition, the form he submitted to the magistrate, a single document comprising both the affidavit and warrant, states it is for a "DUI Blood Draw" (see id. at 1) and adjacent to "Vehicle Code violation" the box for "23152" is checked (see id.).

Opposition to County Defs.' Supplemental Brief in Support of MJP ("Opp'n to Supp. Br.") at 2:25, 3:16), the FAC, while challenging a number of other statements (see FAC ¶¶ 97–103), contains no such challenge to any of the above-referenced statements. Indeed, the FAC contains no mention of Rossberg's statements regarding Wagda's appearance and, as to the FSTs, alleges that Rossberg "ordered" Wagda to perform FSTs (see id. ¶ 83), that Wagda responded, "I decline any sobriety tests right now" (see id.), and that Rossberg retaliated against him in part due to his "lawful decision[] not to consent to FSTs" (see id. ¶ 106).[7] In addition, as to the prior arrest, the FAC alleges Wagda told Rossberg he "had been arrested previously for DUI" (see id. ¶ 69), that such arrest was based on "an allegation" of drug use (see id. ¶ 72), that he had "an open court case" (see id. ¶ 71), and that he was "under prosecution right now" (see id. ¶ 73). Further, although Wagda criticizes the affidavit for not including more specific information about Rossberg's experience with drug-related DUIs, he does not contest Rossberg's description of his experience or his certification as a Drug Recognition Expert.[8]

As set forth above, where, as here, a plaintiff brings a claim based on judicial deception, it is incumbent upon him to show the challenged affidavit "contained misrepresentations or omissions material to the finding of probable cause." See Bravo, 665 F.3d at 1083. Wagda argues that, even if the above-referenced statements establish probable cause, the warrant would still fail "because the [a]ffidavit contains only false

---

[7] Wagda has in essence conceded his inability, at this time, to provide additional factual support for his argument that the truth of such statements remains disputed. See Opp'n to Supp. Br. at 2:18–19, 3:15 (asserting Rossberg's statements concerning Wagda's appearance "are [not] incapable of being discredited through the discovery process" and "[d]iscovery could also develop facts concerning [Wagda's] attempt to explain his refusal [to submit to FSTs]"); see also Iqbal, 556 U.S. at 678–79 (noting Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

[8] Although the Court questions whether the allegations in the FAC are sufficient to dispute Rossberg's statements in the affidavit concerning Wagda's pulse rate, decision-making ability, and repetition of parts of Rossberg's inquiry, it need not decide those issues herein, in that the affidavit contains sufficient independent information, as discussed above, to support a finding of probable cause.

statements to justify the initial traffic stop" for speeding (see Opp'n to Supp. Br. at 3). As set forth below, the Court is unpersuaded.

First, the FAC lacks factual allegations sufficient to show an affirmative misrepresentation. Wagda's allegation that the "dashcam recordings show ongoing radar system sounds apparently inconsistent with the purported radar lock" (see FAC ¶ 97) is wholly conclusory in nature, and his allegation that the "data recording from Officer Rossberg's patrol vehicle . . . shows no radar readings . . . above '0 MPH'" (see id.) is made without any information as to how and when such "readings" were determined and, in any event, what such circumstances signify. Similarly, Wagda's contention, which is not pleaded in the FAC, that Rossberg misrepresented that his police car's radar "had been calibrated in Aug. 2014" (see Opp'n at 8:8–9 (quoting SW/Aff. at 2)) is no more than speculative, as it is based solely on his assertion that Rossberg did not include that statement in his police report (see id. at 8:9–10). Tellingly, Wagda does not dispute he was going 41 m.p.h. or otherwise speeding, whether based on the "posted speed limit" of 30 m.p.h. (see FAC ¶ 66) or the "85th percentile speed" of 34.58 m.p.h. (see id.).[9]

Next, to the extent Wagda relies on alleged omissions from the affidavit, his challenge fares no better, as only one of those omissions is arguably material, the expiration of the speed survey,[10] and, as to that omission, the FAC contains no allegation to support an inference that it was "made intentionally or with reckless disregard for the truth." See Bravo, 665 F.3d at 1083. Indeed, the FAC alleges that Rossberg testified "he did not know when the last speed survey was conducted." (See FAC ¶ 66.) Moreover,

---

[9] Citing Crowe v. Cnty. of San Diego, 608 F.3d 406 (9th Cir. 2010), Wagda argues "it is of zero legal import" whether he was speeding because "any omission tending to support probable cause is deemed immaterial." (See Opp'n at 8:3–5.) Wagda's reliance on Crowe is misplaced. Crowe concerns the effect of an omission from a warrant affidavit, not a civil complaint. See id. at 435.

[10] Wagda alleges the survey was conducted on August 21, 2009, "more than five years prior to" December 22, 2014, the date on which he was stopped (see FAC ¶ 66), and that such circumstance made the roadway where he was stopped "a statutory 'speed trap'" (see id.).

Wagda has not pled facts to support his conclusion that the roadway constituted a speed trap, see Cal. Veh. Code § 40802 (defining "speed trap") or, more specifically, that a five-year expiration date applied to the survey, see id. § 40802(a)(2) (setting forth circumstances under which five-year period applies), id. § 40802(c)(2)(B)(i)(I), (II) (setting forth circumstances under which seven-year and ten-year periods apply). In any event, even if the roadway constituted a speed trap, such circumstance would not invalidate the stop in the instant case. See People v. Hardacre, 116 Cal. App. 4th 1292, 1300–01 (2004) (holding reasonable suspicion supported stop where facts and circumstances known to officer at time indicated defendant was exceeding posted speed limit, notwithstanding later finding portion of road in question constituted speed trap); see also Cal. Veh. Code § 40804(a) (providing sole penalty for violation of speed trap law is preclusion of officer's testimony and is applicable only where prosecution is for offense "involving the speed of a vehicle"); Dyer v. Dep't of Motor Vehicles, 163 Cal. App. 4th 161, 171 (2008) (holding "where the driver is detained or arrested on a charge of DUI, the exclusionary provisions of section[] 40804 . . . are inapplicable"; explaining "offense of [DUI] does not 'involve the speed of a vehicle'") (citing Hardacre, 116 Cal. App. 4th at 1299).

In sum, as facts sufficient to support probable cause remain after the affidavit is corrected to both remove all disputed material facts and add all omitted facts, Wagda has failed to state a claim for judicial deception with respect to the search. See, e.g., Bravo, 665 F.3d at 1084.

Accordingly, to the extent Wagda's Fifth Claim is based on the allegations in ¶ 143(g), the claim is DISMISSED, with limited leave to amend to allege, if he can do so, additional facts to show a material misrepresentation or omission pertaining to Rossberg's stated use of a radar gun.

**B.      Ninth Claim: Doctrine of Unconstitutional Conditions**

In his Ninth Claim, Wagda alleges Jimenez, Rossberg, Neabeack, and Stapleton, by "conditioning [his] booking into MDF upon a waiver of his Fourth Amendment and Fifth

1  Amendment rights, . . . deprive[d] [him] of his right not to have receipt of a governmental

2  benefit conditioned on the waiver of a constitutionally protected right." (FAC ¶ 160.) In

3  support thereof, Wagda alleges "Rossberg and John Doe 5 booked [him] into jail in

4  retaliation for [his] nonconsent to a blood draw and assertion of [his] Fifth Amendment

5  right to remain silent." (Id. at 27:20–21; see also id. ¶¶ 90–92, 94–95.)

6        Under the unconstitutional conditions doctrine, "the government may not deny a

7  benefit to a person because he exercises a constitutional right." Koontz v. St. Johns

8  River Water Management Dist., 133 S.Ct. 2586, 2594 (2013) (internal quotation and

9  citation omitted). The doctrine "limits the government's ability to exact waivers of rights

10 as a condition of benefits, even when those benefits are fully discretionary." See United

11 States v. Scott, 450 F.3d 863, 866 (9th Cir. 2006).

12       As defendants correctly point out, the FAC contains no allegations suggesting

13 Jimenez, Neabeack, or Stapleton had any involvement in the above-referenced events.

14 Consequently, Wagda fails to state his Ninth Claim against those defendants. See

15 Blankenhorn, 485 F.3d at 481 n.12.

16       As to Rossberg, defendants contend Wagda's Ninth Claim should be dismissed

17 because it is "synonymous with Wagda's First Amendment retaliation claim." (See MJP

18 at 9:17.) The Court disagrees.

19       Wagda alleges: (1) that Rossberg gave him the "choice" of being cited and

20 released if he "cooperate[d] with police questioning and consent[ed] to a blood draw," or

21 being booked into MDF if he "continue[d] to assert his Fourth Amendment right to a

22 warrant for the blood draw[] and his Fifth Amendment right to decline to answer

23 questions" (see FAC ¶ 90); (2) that he rejected Rossberg's "citation-and-release offer"

24 (see id. ¶ 92); and (3) that he was booked into MDF as a result. Such allegations plead a

25 claim based upon the imposition of an unconstitutional condition on Wagda's Fourth and

26 Fifth Amendment rights. See Koontz, 133 S.Ct. at 2594. Although, as defendants

27 contend, the same facts underlie Wagda's First Amendment retaliation claim, defendants

28 cite to no authority precluding a plaintiff from relying on alternative theories to plead a

12

1   claim.

2        Accordingly, with respect to Jimenez, Neabeack, and Stapleton, Wagda's Ninth

3   Claim is DISMISSED without leave to amend, Wagda previously having been afforded

4   leave to plead said defendants' participation or involvement in the above-referenced

5   events and having failed to do so.  See October 24 Order at 18–19 (dismissing, as to

6   Jimenez, Neabeack, and Stapleton, Fourth and Fifth Claims, which claims are predicated

7   on same conduct as Ninth Claim); with respect to Rossberg, Wagda's Ninth Claim is not

8   dismissed.

9   **C.    Eleventh Claim: False Arrest**

10       In his Eleventh Claim, Wagda asserts, as against Jimenez, Rossberg, Neabeack,

11  and Stapleton, a claim for false arrest based on the above-referenced December arrest.

12  In particular, Wagda alleges he was falsely arrested "without a warrant or probable cause

13  and . . . in violation of the Speed Trap Statute."  (See FAC ¶ 168.)  Wagda further asserts

14  Town and County are, under California Government Code § 815.2 ("§ 815.2"), vicariously

15  liable for said officers' conduct, which, Wagda alleges, was "committed within the course

16  and scope of" the above-referenced officers' employment (see FAC ¶ 169).

17       In California, "[a] police officer who makes an arrest without a warrant and without

18  justification may be held civilly liable for false arrest and imprisonment."  Dragna v. White,

19  45 Cal. 2d 469, 471 (1955); see also Asgari v. City of Los Angeles, 15 Cal. 4th 744, 752

20  n.3 (1997) (noting false arrest and false imprisonment "are not separate torts"; explaining

21  "[f]alse arrest is but one way of committing a false imprisonment") (internal quotation and

22  citation omitted).

23       An officer "acting within the scope of his or her authority" may not, however, be

24  held civilly liable for false arrest, or false imprisonment arising out of an arrest, where

25  "[t]he arrest was lawful, or the peace officer, at the time of the arrest, had reasonable

26  cause to believe the arrest was lawful."  See Cal. Penal Code § 847(b).  Under California

27  law, "[a] peace officer may arrest a person without a warrant whenever he has probable

28  cause to believe that the person has committed a misdemeanor in his presence."  See

13

Cervantez v. J. C. Penney Co., Inc., 24 Cal. 3d 579, 587 (1979) (citing Cal. Penal Code § 836, subd. 1),[11] superseded by statute on other grounds, Cal. Penal Code § 243; see also Levin v. United Airlines, 158 Cal. App. 4th 1002, 1017 n.18 (2008) (noting "interchangeab[ility]" of "reasonable cause and probable cause"). "Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt." Levin, 158 Cal. App. 4th at 1018 (internal quotation and citation omitted). The applicable standard is an "objective" one; an officer's "actual or subjective belief that plaintiff did or did not commit a crime is irrelevant to the probable cause analysis." See id. at 1019.

Here, in support of dismissal, defendants contend Wagda has failed to allege facts sufficient to show a lack of probable cause for the December arrest. Contrary to defendants' contention, however, a party bringing a claim for false arrest, or false imprisonment based on unlawful arrest, does not have to allege facts showing a lack of probable cause. Rather, "[a] cause of action for false imprisonment based on unlawful arrest is stated where it is alleged that there was an arrest without process, followed by imprisonment and damages." See Dragna, 45 Cal. 2d at 471. "Upon proof of those facts the burden is on the defendants to prove justification for the arrest." See id.; see also Skeels v. Pilegaard, 2013 WL 970974, at *4 (N.D. Cal. 2013) (holding "[p]robable cause is a defense to a false arrest claim premised on a warrantless arrest; to make out a prima facie case, a plaintiff need not show lack of probable cause"). Here, Wagda has alleged the elements of a prima facie case of false arrest, or false imprisonment based on unlawful arrest, as he alleges he was arrested without a warrant, taken in custody to a police station, and thereafter taken to MDF, where he was held until his release, resulting in his having suffered emotional distress and other damages.

---

[11] The current version of § 836 reads as follows: "A peace officer may arrest a person . . . without a warrant . . . whenever . . . [t]he officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence." See Cal. Penal Code § 836(a)(1).

1     Nevertheless, in this instance, the Court's analysis does not end at this point.  As

2  noted above, Wagda has asked the Court to take judicial notice of the affidavit for the

3  search warrant.[12]  That affidavit contains sufficient facts, set forth above, see supra Part

4  A.3., to show Rossberg had probable cause to arrest Wagda for driving under the

5  influence.[13]  See Espinoza, 10 Cal. App. 5th at 102 (holding officer may consider, inter

6  alia, "objective symptoms of intoxication" and driver's "refusal to submit to [FSTs]" when

7  determining whether there is probable cause to arrest for DUI"); People v. Martin, 9 Cal.

8  3d 687, 692 n.5 (1973) (holding officer's "knowledge of [suspect's] prior activities . . . can

9  be used, in connection with other information, to support a finding of probable cause for

10  arrest").  Further, Wagda alleges Rossberg told him he had been pulled over for speeding

11  (see FAC ¶ 68) and Wagda has asked the Court to take judicial notice of the police

12  report, in which Rossberg states he estimated Wagda's speed at 40 m.p.h.  The FAC

13  contains no allegation to the contrary, and, for the reasons discussed above, even if the

14  roadway, as Wagda alleges, constituted a speed trap, such circumstance would not

15  invalidate Wagda's arrest for DUI.  See supra Part A.3.  Accordingly, Wagda's claim

16  against each of the individual officers fails.

17     Moreover, as to Jimenez, Neabeack, and Stapleton, Wagda's false arrest claim

18  fails for the additional reason that, as set forth in the Court's prior order, Wagda has not

19  alleged any facts showing said defendants participated or were involved in the

20  challenged arrest.  See October 24 Order at 18; Blankenhorn, 485 F.3d at 481 n.12.

21     In light of the above, to the extent the Ninth Claim is alleged against Town and

22  County, such claim likewise fails.  See Cal. Gov't Code § 815.2(a) ("A public entity is

23  liable for injury proximately caused by an act or omission of an employee of the public

24  _____

25     [12] The Court acknowledges that the content of the affidavit can be disputed and, as
set forth above, has relied only on the relevant undisputed statements therein.

26     [13] For purposes of the instant claim, the Court has not considered Rossberg's
27  observations of Wagda at the police station (see SW/Aff. at 2), as those observations
occurred after his arrest and thus are not relevant to the analysis of probable cause for
28  such arrest.

entity within the scope of his employment if the act or omission would . . . have given rise

to a cause of action against that employee or his personal representative"); <u>Collins v. City</u>

<u>and Cnty. of San Francisco</u>, 50 Cal. App. 3d 671, 673–74 (1975) (holding, with respect to

claim for false arrest or false imprisonment, pursuant to § 815.2, municipal defendant's

liability "is coextensive with the liability, if any, of the police officer; if for any reason the

officer would not be liable . . ., then also the city would not be liable").

Accordingly, Wagda's Eleventh Claim is DISMISSED without leave to amend.

**D.      Twelfth Claim: False Imprisonment**

In his Twelfth Claim, Wagda asserts, as against Jimenez, Rossberg, Neabeack,

and Stapleton, a claim for false imprisonment based on the December arrest, and again

alleges Town and County are vicariously liable under § 815.2.  In particular, Wagda

alleges he was falsely imprisoned "without a warrant or probable cause" and "in

retaliation for the exercise of [his] First, Fourth, and/or Fifth Amendment rights."  (<u>See</u>

FAC ¶ 172.)

Defendants again contend Wagda has failed to allege facts sufficient to show a

lack of probable cause for his arrest.

"[U]nlawful detention after a lawful arrest may give rise to a false imprisonment

action."  <u>See</u> <u>Moore v. City and Cnty. of San Francisco</u>, 5 Cal. App. 3d 728, 735 (1970),

<u>superseded by statute on other grounds as stated in</u> <u>Beavers v. Allstate Ins. Co.</u>, 225

Cal. App. 310 (1990).  "'False imprisonment is the unlawful violation of the personal

liberty of another.'"  <u>Singleton v. Perry</u>, 45 Cal. 2d 489, 494 (1955) (quoting Cal. Penal

Code § 236) (holding false imprisonment is "the interference with the personal liberty of

the plaintiff in a way which is absolutely unlawful and without authority"; further holding

defendant's motive irrelevant for purposes of liability).  "The elements of a tortious claim

of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2)

without lawful privilege, and (3) for an appreciable period of time, however brief."  <u>Easton</u>

<u>v. Sutter Coast Hosp.</u>, 80 Cal. App. 4th 485, 496 (2000).  Here, as set forth below,

Wagda fails to plead a claim for false imprisonment.

1    First, to the extent the instant claim is based on the lack of a warrant or probable

2 cause, it is duplicative of his Eleventh Claim and, consequently, fails for the same

3 reasons as set forth above.  See supra Part C.

4    Next, to the extent the instant claim is based on retaliation, such claim fails

5 because Wagda does not allege defendants lacked legal authority to book him into MDF.

6 Indeed, California law expressly authorizes police officers to detain rather than release

7 persons arrested for a violation of § 23152.  See Cal. Penal Code § 853.6(i)(3); Cal. Veh.

8 Code § 40302.  Wagda's allegation that Rossberg's decision to book him was motivated

9 by "retaliation" (see FAC ¶ 92) is not relevant to the analysis of a false imprisonment

10 claim.  See Singleton, 45 Cal. 2d at 494 (holding "[t]he provocation, motive and good faith

11 of the defendant in an action for false imprisonment constitute no material element in the

12 case").

13    Further, as to Jimenez, Neabeack, and Stapleton, the instant claim fails for the

14 additional reason that Wagda does not allege any facts showing said defendants

15 participated or were involved in the alleged misconduct, see Blankenhorn, 485 F.3d at

16 481 n.12, and, as to Town and County, the claim fails because it fails against all of the

17 defendant officers, see Collins, 50 Cal. App. 3d at 673–74.

18    Accordingly, Wagda's Twelfth Claim is DISMISSED without leave to amend.

19 **E.    Thirteenth Claim: Invasion of Privacy**

20    In his Thirteenth Claim, Wagda alleges Jimenez, Rossberg, and Stapleton invaded

21 his privacy in violation of California law and that Town and County are vicariously liable

22 under § 815.2.  In particular, Wagda alleges Rossberg and Jimenez violated his privacy

23 "by disclosing the arrest report relating to the December [a]rrest to the State Bar of

24 California" ("State Bar").  (See FAC ¶ 180; see also id. ¶ 107.)[14]

25    Defendants contend Wagda has failed to identify any private information and

26

27    ―――――――――――
[14] In his opposition, Wagda makes clear such disclosure is "his only remaining
28 claim for [i]nvasion of [p]rivacy."  (See Opp'n at 13:10.)

further contend Wagda "had no reasonable expectation" that the report would not be disclosed to the State Bar. (See MJP at 10:14.)

"[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by [the] defendant constituting a serious invasion of privacy." Heller v. Norcal Mut. Ins. Co., 8 Cal. 4th 30, 42–43 (1994) (internal quotation and citation omitted).

Here, Wagda has failed to satisfy the second element, namely, a reasonable expectation of privacy under the circumstances. Under California law, contrary to Wagda's argument that "arrestees who are not convicted have an expectation of privacy in their arrest records, including the mere fact that they were arrested" (see Opp'n at 13:16–17),[15] state and local law enforcement agencies are required to "make public" both the fact of a person's arrest and a broad range of information concerning that arrest. See Cal. Gov't Code § 6254(f)(1) (providing, in relevant part, "state and local law enforcement agencies shall make public . . . [t]he full name and occupation of every individual arrested by the agency, the individual's physical description, . . . the time and date of arrest, the time and date of booking, the location of the arrest, the factual circumstances surrounding the arrest, the amount of bail set, the time and manner of release or the location where the individual is currently being held, and all charges the individual is being held upon"); see also Loder v. Mun. Ct., 17 Cal. 3d 859, 865 (1976) (holding "the suspect's right of privacy is not violated by prompt and accurate public reporting of the facts and circumstances of his arrest"; noting "social interest" served by, inter alia,

---

[15] The cases on which Wagda relies, Denari v. Sup. Ct., 215 Cal. App. 3d 1488 (1989), and Craig v. Mun. Ct., 100 Cal. App. 3d 69 (1979), are distinguishable, as they concern disclosure of records containing "summary criminal history information," see Denari, 215 Cal. App. 3d at 1494, i.e., what commonly are referred to as "rap sheets", see Cal. Penal Code §§ 11105(a)(2)(A), 11140(a) (defining "state summary criminal history information"); id. §§ 13300, 13301 (defining "local summary criminal history information"); see also Craig, 100 Cal. App. 3d at 76 (discussing disclosure of summary "criminal history records") (citing Cal. Penal Code §§ 11140 et seq., 13302–13304).

"put[ting] others on notice" and encouraging "witnesses to testify").  Notably, Wagda does not point to any particular information in the December arrest report that might fall outside the purview of § 6254(f)(1), nor is any such information otherwise apparent.

Moreover, under California law, district attorneys ("DAs") are required to notify the State Bar "of the pendency of an action against an attorney charging a felony or misdemeanor immediately upon obtaining information that the defendant is an attorney." See Cal. Bus. & Prof. Code § 6101(b) (further providing "[t]he notice shall identify the attorney and describe the crimes charged and the alleged facts").  Wagda is an attorney and was charged with violations of § 23152(e) and § 11550(a), both of which are misdemeanors.  Consequently, the County DA was required to disclose his prosecution of Wagda to the State Bar, including the charges and the underlying facts alleged.  Given such ultimate disclosure, Wagda lacked a reasonable expectation of privacy with respect to any information required to be reported under § 6101(b).  See Heller, 8 Cal. 4th at 44 (holding plaintiff's expectation as to confidentiality was unreasonable where information "would have been inevitably discovered").

Further, as to Stapleton, Wagda's invasion-of-privacy claim fails for the additional reason that the FAC contains no factual allegations showing Stapleton's participation or involvement in the alleged misconduct, see Blankenhorn, 485 F.3d at 481 n.12, and, as to Town and County, such claim fails for the reason that it fails against all of the individual defendants, see Collins, 50 Cal. App. 3d at 673–74.

Accordingly, Wagda's Thirteenth Claim is DISMISSED, with limited leave to amend to allege, if he can do so, information that was disclosed beyond that authorized under California law.

## F.    Fourteenth Claim: Negligence

In his Fourteenth Claim, Wagda alleges Jimenez, Rossberg, Neabeack, Stapleton, Town, and County were negligent, in that said defendants had "duties of reasonable care and due care" to refrain from: (1) "abusing the[ir] authority" (see FAC ¶ 185(a)); (2) "violating [Wagda's] rights" (see id. ¶ 185(b)); (3) "preparing false reporting of the subject

1   incident so as to falsely arrest and imprison [Wagda] and threaten [him] to be subjected

2   to criminal prosecution on knowingly false reported facts" (see id. ¶ 185(c)); and (4)

3   "using a speed trap arresting, or participating or assisting in the arrest of, any person for

4   any alleged violation of the Vehicle Code" (see id. ¶ 185(d)).  Wagda further alleges

5   Town and County are vicariously liable pursuant to § 815.2 "and/or" California

6   Government Code § 815.4 (see id. ¶ 186)[16] and also are liable for their own "negligent

7   hiring, training and supervision of law enforcement officers of Town and County" (see id.

8   ¶ 187).

9        To prevail in an action based on a defendant's alleged negligence, "a plaintiff must

10  demonstrate that the defendant owed the plaintiff a legal duty, that the defendant

11  breached the duty, and that the breach was a proximate or legal cause of his or her

12  injuries."  See Morris v. De La Torre, 36 Cal. 4th 260, 264 (2005).

13       Here, the allegations on which Wagda relies are, in the main, wholly conclusory,

14  and, to the extent arguably factual, allege intentional rather than negligent acts.

15       Accordingly, Wagda's Fourteenth Claim is DISMISSED, with leave to amend to

16  identify the negligent acts on which the claim is predicated and the particular

17  defendant(s) by whom such acts are alleged to have been committed.

18  **G.      Fifteenth and Sixteenth Claims: Bane Act**

19       Wagda brings two claims, his Fifteenth and Sixteenth Claims, pursuant to

20  California Civil Code § 52.1, also known as the Tom Bane Civil Rights Act ("§ 52.1" or

21  "Bane Act").  See Allen v. City of Sacramento, 234 Cal. App. 4th 41, 66 (2015).

22       The Bane Act "provides a cause of action for persons deprived of federal or state

23  constitutional rights by 'threat, intimidation, or coercion.'"  See Lyall v. City of Los

24  Angeles, 807 F.3d 1178, 1184 (9th Cir. 2015) (quoting Cal. Civ. Code § 52.1(b)).  A

25

26       [16] Section 815.4 provides as follows: "A public entity is liable for injury proximately
27  caused by a tortious act or omission of an independent contractor of the public entity to
    the same extent that the public entity would be subject to such liability if it were a private
28  person."  See Cal. Gov't Code § 815.4.

plaintiff bringing a Bane Act claim must show: "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." Allen, 234 Cal. App. 4th at 67. Here, in support of his claims, Wagda alleges Jimenez, Rossberg, Neabeack, and Stapleton violated his civil rights in a number of ways, as discussed below, and further alleges Town and County are vicariously liable pursuant to § 815.2.

### 1. Fifteenth Claim

In his Fifteenth Claim, Wagda alleges Jimenez, Rossberg, Neabeack, and Stapleton violated § 52.1(b) by "interfer[ing] with [his] exercise and enjoyment of his rights," both federal and state, "through threats, intimidation and/or coercion and the use of wrongful force and/or arrest." (See FAC ¶ 189.) The FAC identifies such rights as "including, without limitation," his "right to be free from unreasonable searches and seizures" under the California Constitution[17] and his "right to protection from bodily restraint, harm, or personal insult" under the California Civil Code.[18] (See id.) In his opposition, Wagda clarifies that his Fifteenth Claim is based on "[t]he Rights-for-Release Offer, and the conversations and jail incarceration relating thereto." (See Opp'n at 14:15–18 (citing to ¶¶ 90–95 of the FAC).)

Defendants contend, inter alia, Wagda fails to allege the requisite facts for a Bane Act claim, namely, threats, intimidation, or coercion; defendants further contend speech alone is insufficient unless such speech threatens violence. In response, Wagda argues Rossberg's Rights-for-Release offer was "inherently threatening, intimidating, and, especially, coercive" (see Opp'n at 15:23) and that "later conversations about the offer

_____

[17] The California Constitution provides, in relevant part: "The right of the people to be secure in their persons . . . against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched." Id. Art. I, § 13.

[18] The California Civil Code provides, in relevant part: "[E]very person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm [and] from personal insult." Id. § 43.

. . . had threatening, intimidating, coercive and plausibly violent undertones" (see id. at 15:24–25).

Under the Bane Act, "[s]peech alone is not sufficient to support an action . . ., except upon a showing that the speech itself threatens violence against a specific person . . .; and the person . . . against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat." Cal. Civ. Code § 52.1(j).

Here, Wagda's claim is premised solely upon speech, namely, Rossberg's offer, as discussed above, to cite and release him if he cooperated with police questioning and consented to a blood draw, as opposed to booking him if he did not. (See FAC ¶ 90.) Although such offer arguably could be perceived as threatening, intimidating, or coercive, it does not threaten violence and thus does not satisfy subsection (j). See, e.g., Martin v. Cnty. of San Diego, 650 F. Supp. 2d 1094, 1108 (S.D. Cal. 2009) (holding § 52.1(j) "explicitly provides that violence is a required element where the 'threat, intimidation or coercion' is based purely upon a defendant's statements"). Similarly, neither Rossberg's nor Doe 5's later statements, read in context, can reasonably be understood to threaten violence. (See FAC ¶¶ 94–95); see, e.g., Martin, 650 F. Supp. 2d at 1109 (granting summary judgment in favor of defendant; holding detective's statement that he would attempt to get warrant for DNA sample and "come look[ing] for" plaintiff "did not threaten violence against" him).[19]

Further, as to Jimenez, Neabeack, and Stapleton, Wagda's Bane Act claim fails for the additional reason that he does not allege any facts showing said defendants' participation or involvement in the alleged misconduct, see Blankenhorn, 485 F.3d at 481 n.12, and, as to Town and County, the claim fails because it fails against all of the

---

[19] Wagda's reliance on Gant v. Cnty. of Los Angeles, 772 F.3d 608 (9th Cir. 2014), is unavailing, as the case contains no reference to subsection (j), let alone that said subsection was raised as a defense therein. See id. at 623–24.

individual defendants, see Collins, 50 Cal. App. 3d at 673–74.

Although Wagda requests leave to amend to plead additional facts, the facts he seeks to add are unavailing, as all such alleged conduct occurred long after Rossberg's offer had been made and rejected and in no manner was connected with any interference with a state or federal right.

Accordingly, Wagda's Fifteenth Claim is DISMISSED without leave to amend.

### 2. Sixteenth Claim

In his Sixteenth Claim, Wagda alleges that Jimenez, Rossberg, Neabeack, Stapleton, Town, and County violated § 52.1(b) by "interfer[ing] with [his] exercise and enjoyment of his [federal and state] rights," that Town and County are vicariously liable under § 815.2, and that he is entitled to equitable and declaratory relief "to eliminate the patterns and policies of conduct set forth in [p]aragraph 164" of the FAC (see FAC ¶ 195), which paragraph, in turn, alleges Town and County had policies, customs, and/or practices subjecting them to Monell liability (see id. ¶ 164(a)–(h)). See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

To the extent such claim is based on the same conduct alleged in support of Wagda's Fifteenth Claim, it is duplicative, and, for the same reasons as set forth above, fails. See supra Part G.1. To the extent it is based on other alleged conduct, it lacks any, let alone sufficient, specificity, see Twombly, 550 U.S. at 555 (holding complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (internal quotation and citation omitted), and, in any event, none of the 123 paragraphs Wagda seeks to incorporate therein alleges conduct reflecting a violation of § 52.1 by any of the moving defendants. Lastly, Wagda's reliance on ¶ 164 is unavailing, as none of the policies, customs, and/or practices alleged therein reflect any "interference or attempted interference . . . by threats, intimidation, or coercion," see Allen, 234 Cal. App. 4th at 67, and, further, the claim in which such paragraph is included was dismissed in its entirety by the Court's prior order, see October 24 Order at 43.

Accordingly, Wagda's Sixteenth Claim is DISMISSED without leave to amend.

**CONCLUSION**

For the reasons stated above:

1.     Defendants' motion for judgment on the pleadings is GRANTED in part and DENIED in part as set forth above.

2.     Leave to amend is granted as set forth above.

3.     Wagda's Second Amended Complaint, if any, shall be filed no later than June 16, 2017.  In any Second Amended Complaint, Wagda may amend to cure the deficiencies noted above but may not otherwise amend without first obtaining leave of court.  See Fed. R. Civ. P. 15(a)(2); Fed. R. Civ. P. 16(b)(4).

4.     If Wagda does not file a Second Amended Complaint within the time provided, the instant action will proceed on the remaining claims in the First Amended Complaint.

**IT IS SO ORDERED.**

Dated: May 26, 2017

MAXINE M. CHESNEY
United States District Judge